Taylor *v.* Boardman, Jr.

---

## John R. Taylor *v.* George Boardman, Jr.

*The laws of sister States to be proved as facts. The effect of ti- tle, by chattel mortgage in a sister State, and title, by purchase of the same chattel, when wrongfully brought into this State, by a bona fide purchaser, discussed and decided.*

Our courts will not take *judicial notice* of the laws of a sister State, for they are to be proved as facts.

Where four carding engines were duly mortgaged in Massachusetts, where two of the mortgagors and the mortgagee resided, and the mortgage was duly assigned to the plaintiff, who duly foreclosed the same in conformity to the laws of Mas- sachusetts, so that his title was absolute and valid in Massachusetts, as against creditors and purchasers, and one of the mortgagors wrongfully brought the said property into this State, and sold the same to a *bona fide* purchaser, who had no notice of the mortgage, in an action of trover for the same, *it was held*, that the subsequent bringing of the property within this State, cannot render the plain- tiff's title void, and that it can make no difference, whether the title of the plain- tiff became perfect by an *absolute sale*, or by a mortgage and a subsequent fore- closure.

If a citizen of a sister State, has acquired an absolute title to property, which at the time was within that State, in conformity to the laws of that State, that title will be protected in our courts.

TROVER for four carding engines. Plea, general issue, and trial by jury.

On the trial, the plaintiff offered in evidence a mortgage deed, of said carding engines, executed by Jeremiah Essex, Geo. W. Hamilton, and Joseph Tanner, to William A. Gould, dated the 25th day of July, 1845, with evidence tending to prove, that said mortgage was executed in the State of Massachusetts, and duly recorded in said State, agreeably to the laws of Massachusetts; and that the same was duly assigned to the plaintiff, and that said mortgage had been foreclosed by the plaintiff, in conformity to the laws of the said State. The plaintiff also offered evidence tending to prove that at the date of the execution and delivery of said mortgage, said carding engines were situate, in a wadding factory belonging to said mortgagors, in Massachusetts, and that the mortgagors resided in Massachusetts, except said Essex, who resided in Bennington, Vermont. That the said Hamilton and Tanner, and the said Wm. A. Gould, the mortgagee, continued to reside in Massachusetts, until after the foreclosure of the mortgage; and that by the laws of Massachusetts, the plaintiff, as assignee of the said mortgage, had the right to take said property into his possession, at any time; that after the foreclosure of said mortgage all right of the said mortgagors, in said property ceased, and the title thereto was absolute in the plaintiff.

And that neither the plaintiff or the said Gould ever took the said property into actual possession; but that by virtue of the laws of Massachusetts, such possession of the mortgagors did not subject said property to be taken for their debts, nor could they transfer any title thereto, by sale or otherwise, except their interest, as mortgagors; that after said foreclosure, and said title had become absolute in the plaintiff, the said Hamilton, without the knowledge or consent of the plaintiff, took the said carding engines, in Massachusetts, just at night, and said he was going to take the same to Vermont, and that they would be in Vermont before morning, and that he was going to sell them; and thereupon transported the said engines to said Bennington, and sold the same, professing to transfer the entire title thereto, for a valuable consideration to one James Hicks, who thereafter sold the same for a valuable consideration to the defendant; that neither the said Hicks or the defendant, at the time of their respective purchases, had any notice or knowledge of the existence of the said mortgage, or the claim of the plaintiff.

It was admitted that before the commencement of this suit, and

while said property was in the possession of the defendant, it was demanded by the plaintiff of the defendant, and that the defendant refused to surrender it, claiming the whole title thereto, and that he continued to use the same, in his wadding factory, as he had done since his purchase.

Upon this evidence, the court held that the plaintiff was not entitled to recover, and directed the jury to return a verdict for the defendant.

Exceptions by plaintiff.

*Robinson & Sibley, D. Roberts, Jr.,* and *E. Davis* for plaintiff.

1. The "knowledge and consent" of the purchaser to the property's remaining in the hands of the vendor, or permitting it to remain in his hands, is a material inquiry in the question of constructive fraud. *Fletcher* v. *Howard,* 2 Aik. 117. And no case is found where a re-possession, without the knowledge and consent of the vendee, has been regarded as a constructive fraud. On the contrary, a re-possession, without the knowledge or consent of the vendee, has been held not to vitiate the sale. *Lynde et al.* v. *Melvin,* 11 Vt. 683. *Emerson et al.* v. *Hyde,* 8 Vt. 352, confirms the rule, by holding the principal responsible for the act of his own agent, *because* he *was agent.* Note the distinction in *Lynde et al.* v. *Melvin, supra.*

This is distinguishable from *Skiff* v. *Solace,* 23 Vt. 279. 1. There was neither actual nor constructive possession in the mortgagee; here was constructive possession in the plaintiff. 2. That was a question of conflicting *liens;* here, all right of property was gone in the original mortgagors, leaving them a mere naked possession, and in the plaintiff absolute title, with right to immediate possession, and of course constructive possession. 3. There, the property was brought within our jurisdiction by the plaintiff's consent, and so by his consent made subject to our peculiar laws; here, it was brought within it surreptitiously, and without the knowledge, and against the will of the plaintiff.

2. The transfer, by the foreclosure, was by *operation of law,* and so is out of the rule requiring a change of possession. *Kidd* v. *Rawlinson,* 2 R. & P. 59. *Kelly* v. *Hart,* 14 Vt. 50. *Mitchell* v. ——, 2 W. & S. 253. *Osborn* v. *Tuller et al.,* 14 Conn. 530. 1 Smith's Leading Cases 53, 66 and 67.

*J. L. Stark, Jr.,* for defendant.

Two questions arise, by the bill of exceptions, to be passed upon by this court.

1. Whether by the laws of Massachusetts, the mortgage was valid, and would, (as against attaching creditors and *bona fide* purchasers,) have protected the mortgage *lien* of the plaintiff, within her own jurisdiction?

11. Whether the title of a mortgagee of personal property in Mass., both parties residing there, and good by the laws of Mass., though the property remains in the hands of the mortgagor, is to *prevail in this State* against attaching creditors, or *bona fide* purchasers, without notice of the mortgage *lien,* when the property is transported here by, and found here in the possession of the mortgagor?

1. If it appears from the whole case, that the ruling of the court below is right, and that the defendant is entitled to judgment, the case will not be remanded for a new trial. *Morse* v. *Crawford,* 17 Vt. 499. In this case the exceptions find that the plaintiff introduced testimony " tending to prove that the mortgage was duly recorded in Mass., agreeably to the laws of Mass." ; also that Essex, one of the mortgagors, resided in Bennington, in this State.

By the statute of Mass. the mortgagee of personal property must, (unless he takes and retains the possession thereof,) have his mortgage recorded, by the clerk of the town where the mortgagor resides, &c. Rev. Stat. of Mass. 473, § 5. Supplement to Rev. Stat. 262, § 2. And unless the plaintiff has strictly complied with the requirements of the statute, he has no title by common law, or by statute in Mass. *Travis* v. *Bishop,* 13 Met. 505. *Sharpley* v. *Wentworth,* 13 Met. 358. *Dewey* v. *Lincoln,* 13 Met. 200. In this case, one of the mortgagors resided out of the State of Mass., and there could be no such record of the mortgage as the statute contemplates, for the statute could not apply to the recording, by town clerks out of that State. *Smith* v, *Moore,* 11 N. H. 64. *Woodward* v. *Gates,* 9 Vt. 364.

2. Admitting that both parties to the mortgage resided in Mass., and that the mortgage is valid by the laws of that State, and that it is duly recorded, the plaintiff is not entitled to recover. If the lien created by the mortgage is valid in Mass., and it conflicts with the rights and the title acquired by our own citizens, under our

own laws; the preference will be given to the lien created in this State. The mortgage lien was a personal privilege, local in its effect, and dependent on the laws of the place.

The defendant was not a party to the contract under which the plaintiff claims, and the comity of States does not require that liens created by laws of a foreign State should be recognized here to defeat the claim of our citizens to property legally conveyed to them, within our own jurisdiction. This was decided in this State when attachment was made on property which was subject to a lien precisely like the one under consideration. *Skiff* v. *Solace*, 23 Vt. 279. And the rule is, that where the debtor can sell and give the buyer a good title, the creditor can seize. Story's Conflict of Laws, § 389. *Lanfear* v. *Sumner*, 17 Mass. 112. The same principle, as to foreign liens was recognized in Story's Conflict of laws, § 323, 327. *Ingraham* v. *Geyer*, 13 Mass. 146.

In cases of absolute sales made abroad, of personal property, which are *valid* by the laws of the State where made, and *invalid* by the laws of the State where sought to be enforced, and in conflict with the *rights of its citizens, the laws of the former must yield to the laws of the place where the remedy is sought.* Story's Conflict of Laws, § 385–388. *Lanfear* v. *Sumner*, 17 Mass. 109. *Lamb et al.* v. *Durant*, 12 Mass. 54.

It is a well known maxim of law, that "he has the better title, who is first in point of time." Also, that " where the right is equal the party in actual possession shall prevail." Broom's Legal Maxims, 323, 330.

The opinion of the court was delivered by

BENNETT, J. This is an action of trover, and the case involves the title to certain carding engines. It seems, that the engines in question, on the 25th day of July, 1845, were the property of Messrs. Essex, Hamilton, and Tanner, being then in their factory, in 'Massachusetts; and that at Massachusetts, on the same day, they mortgaged them to one William A. Gould, to secure the payment of a certain note specified in the mortgage, with a power of sale, in case of a breach of the condition of the mortgage.

Two of the mortgagors, and Gould, the mortgagee, resided in Massachusetts, at the time of the execution of the mortgage, and continued to reside there, until after there had been a foreclosure.

XXV. 38

of the mortgage; Essex, the other mortgagor, resided in Vermont. The case finds, that the mortgage was duly assigned to the plaintiff, and had been foreclosed by him, under the laws of Massachusetts, and that by the laws of that State, the title of the plaintiff became complete and absolute, and that all further right, in the mortgagors to said property thereupon ceased, and the plaintiff had the right at any time, to take possession of the property; though the case shows, that neither he or Gould ever had the actual possession of it; but still, the title of the plaintiff, under the laws of Massachusetts, was not only complete against the mortgagors; but also against their creditors and subsequent *bona fide purchasers.*

The case further finds, that after the title of the plaintiff had thus become absolute, Hamilton, one of the mortgagors, without the consent or knowledge of the plaintiff, brought the property into Vermont, and sold it to one James Hicks, and Hicks sold it to the defendant; both Hicks and the defendant are to be taken as *bona fide purchasers,* and though Hamilton professed to sell the whole property, yet there is nothing to show that in so doing, he acted by the consent of the other mortgagors, unless their consent can be implied out of the transaction. The case also shows, a demand and refusal to give the property up, the defendant claiming title to it. The court below directed a verdict for the defendant; and we are to revise the correctness of that decision, upon the aforesaid facts.

It has been argued, that by the laws of Massachusetts, the title of the plaintiff was not perfect against the mortgagors, and their creditors, and *bona fide purchasers;* but this is against the express finding of the bill of exceptions, and we are bound by the facts reported.

The laws of a sister State, are to be proved as facts, and we cannot revise the finding of the County Court, upon a question of this kind, especially, unless the bill of exceptions furnish some means. No principle is better settled, than the one which restrains courts from taking *judicial notice* of the laws of a sister State.

It must then be taken, that so long as the property in question remained in Massachusetts, and under their law, the title of the plaintiff was complete against the mortgagors, and all persons claiming under them, whether as creditors or purchasers, and the question comes to this; can the plaintiff be defeated of his right of property, by the wrongful act of Hamilton, in taking and bringing

it into this State, and there selling it?   It is urged, that as our laws require a change in the possession of a chattel, upon a mortgage or sale, in order to protect it against *creditors* of the vendor, and subsequent purchasers, the title of the defendant, in this case, should prevail, though the title of the plaintiff is *first in time*, and complete under the laws of Massachusetts, where the contract was made, and which was the *situs* of the property down to the time when it was wrongfully brought by Hamilton into this State.   To hold that the plaintiff is defeated of his *prior title*, would be somewhat severe, as he had done what was necessary, by the laws of Massachusetts, to perfect it.   Suppose this action had been brought in the courts of Massachusetts, would it be claimed, that the plaintiff's title had been defeated, by the tortious acts of Hamilton?   The parties to this suit may have *equal equities;* but should not the rule apply, that where the *equities are equal*, the title *first in time* shall prevail?   It would indeed be a strange *conflict of laws*, if the defendant could defend successfully this suit, in the courts of this State, and if sued in Massachusetts have no such right.

It stands conceded, by the case itself, that the plaintiff's title, by the laws of Massachusetts, is valid, as against the defendant; and it is difficult for me to see, how the laws of Vermont can empower Hamilton, by his own tortious act, to transfer that title to the defendant, or how the validity of a transfer made in one State, under its laws, can be impeached, for any purpose, by the laws of another State.

The case of *French* v. *Hall*, 9 N. H. 137, is strongly in point. Pope, a citizen of this State, sold a sulkey to the plaintiff, a citizen of Keene, New Hampshire, at Keene, which he had used here, and it was known as his property.   Soon after, the plaintiff in New Hampshire loaned to the vendor, the same sulkey to come to Vermont, and it was here attached and sold, as his property, by his creditors; and it was claimed that it was liable to be so taken, under the laws of this State, for the want of a sufficient change in the possession; but the court held, that the laws of Vermont could have no influence upon the plaintiff's title, and that it must be judged of, by the laws of the place where the contract was made, and where the property was sold and delivered, and the court say, "It

would doubtless have been the same had the action been brought in Vermont." *Douglass* v. *Oldham*, 6 N. H. 150.

If the title of the present plaintiff was once valid, as *against creditors and purchasers*, the subsequent bringing of the property within the limits of this State cannot render it void, and especially as Hamilton was not even a bailee of it, for any such purpose; and we apprehend it can make no difference, whether the title of the plaintiff became perfect by an *absolute sale*, or by a mortgage and a subsequent foreclosure. It is a common principle, that the *lex loci contractus* settles the *nature, validity, construction* and *effect* of the contract; and the case itself finds, that by that law, as already remarked, the title of the plaintiff was complete against everybody; and why should not our courts give effect to such a title? The place of the contract, was the *domicil* of the mortgagee, and two of the mortgagors, and the property was also there. In transferring the title to the plaintiff, under the laws of Massachusetts, no injury was done to the citizens of this State, for the reason that no property within its jurisdiction was transferred. If the engines had been within this State, at the time of making the mortgage, and had remained here up to the time of the sale to Hicks, the question would have been quite different from the one now before us. To test the plaintiff's title, by our laws, would be to repudiate the doctrine, that the *lex loci contractus*, governs, as to the *effect* of the contract. In *Thuret et al.* v. *Jenkins et al.*, 7 Martin 318, we have another case in point. A bill of sale was executed of a New York ship, at New York, which was then at sea; the vendors and vendee being residents of New York. The ship went to New Orleans, and upon her arrival there, was attached, as the property of the vendors, by their creditors. It was a conceded point in that case, that by the laws of England, as well as the laws of New York, the title to the ship passed to the vendee *eo instanti*, upon the execution of the bill of sale, provided, he took possession of her within a reasonable time after she came within his reach. But, by the civil law which prevails in Louisiana, the vendee's title would not be complete against the creditors of the vendors, until he had taken actual possession; yet the court gave effect to the title of the vendee, and denied the validity of the attachment. The court say, "if two persons, in any country, choose to bargain, as to the property, which one of them has in a chattel not then with-

in the jurisdiction of the place, they cannot expect that the rights of persons, in the country in which the chattel is, will there be permitted to be affected by their contract. *But if the chattel be at sea,* or in *any other place,* if any there be, in which the law of no particular country prevails, *the bargain will have its full effect, eo instanti, as to the whole world, and the circumstance of the chattel being afterwards brought into a country, according to the laws of which, the sale would be invalid, would not affect it.*" This is precisely the case now before us, and it is worthy of remark, that in the case at bar, and in the two cases cited, the same reason was urged why the sale was not complete, viz: a want of change in the possession.

The case of *Norris* v. *Mumford,* 4 Martin 20 ; *Ramsay* v. *Stevenson,* 5 Martin 23 ; and *Oliver* v. *Townes,* 14 Martin 93, stand upon the ground that the chattels were within the jurisdiction of Louisiana, when they were transferred ; and the cases, upon examination, I find, are specially put upon that ground ; yet Mr. Livimore, in his Dissertations, 220 to 223, denies the soundness of those decisions. But, I can readily see that if these engines had been in Vermont, and subject to its jurisdiction and to the claims of creditors here, and the owner had attempted in Massachusetts, to transfer a title to a citizen of that State, without changing the possession, there would be ground to claim that there was a conflict of laws, and it would be a question, which law should yield to the other. The rule in such case may probably be, that the laws where the remedy is sought, shall prevail, and if the plaintiff's right stood upon such grounds, he might fail.

The defendant stands upon no better ground than an attaching creditor would, and a creditor residing in this State, could not call upon our courts to protect any rights, which he might have to his debtor's property, so long as it was out of the State ; and hence in the case at bar, there could be no conflict of claims. The right and title of the plaintiff is as sacred as any, which could be acquired under our own government, and should be respected by all civilized tribunals. It would indeed be monstrous, if the laws of Vermont should permit the property of the plaintiff, which was acquired in a sister State, and according to the laws of that State, to be seized and sold to satisfy the debt of an other, or that he should be divested of it, by a tortious sale, without law or right, though made to a *bona fide* purchaser.

The case of *Lamb et al.* v. *Durant*, 12 Mass, 54, and *Lanfear* v. *Sumner*, 17 Mass. 110, have been much relied upon by the defendant; but we do not think them in point. In the case in the 12th, a moiety of a brig was owned by one Lamb and Maynard, as partners, which vessel was then at sea, on a voyage to the West Indies, under the command of Maynard, who was also consignee of the brig and cargo. While thus at sea, Lamb, in Massachusetts, executed a bill of sale, for himself and partner, of a moiety of the brig to the plaintiffs; and after this, Maynard, at the West Indies, executed a bill of sale of a moiety to a third person, who took possession of the vessel; sent her to sea, in his own name, and caused her to be *documented* in his name.

Maynard, at the time of his sale, was part owner, and the question was, which title should prevail, both being *bona fide* purchasers.

The junior title prevailed upon the ground, that when a vessel at sea is sold at home the second purchaser abroad, takes her discharged of all incumbrances upon her, before notice. The first purchaser in that case, had not perfected his title, as against the second purchaser. So in the 17th of Massachusetts, the first title had not been perfected against the person claiming under the junior title, as the court thought, for want of possession. Though here was a conflict of title, there was no question as to a conflict of laws between different sovereignties. But suppose the first title had been perfect under the laws of Pennsylvania, yet the property was not there, but in fact in Massachusetts, and then it would be like the case in the 14th of Martin's Reports. The material distinction between these cases, and the one before us, is, that though there had been no possession in the plaintiff of the engines, yet by reason of the Massachusetts law relative to chattel mortgages, his title was complete.

The recording of the chattel mortgage, came in lieu of a change of possession, even as to *creditors* and *subsequent purchasers*.

The case of *Skiff* v. *Solace*, 23 Vt. 276, is simply a case of lien, and the plaintiff, in whose favor the *lien* was created, was at the time, a citizen of this State. Though it has been claimed, that where a *lien* has been created by contract, the *lex loci contractus*, will generally be respected and enforced in all places, where the property is found, yet this is not universally true, and it has even

Taylor *v.* Boardman, Jr.

been claimed, that the *lex rei sitae* should, as a general rule, govern. But be that as it may, that case surely can not govern this. That might well be considered as it was, a question of *priority of lien.*

In *Harrison* v. *Hervy* 5 Cranch 294, MARSHALL, Ch. J., says, "The law of the place, where the contract is made, is generally the *law of the contract ;* but the *right of priority* forms no part of the contract itself. It is, (he says,) *extensive,* and is rather a personal privilege, dependent upon the law of the place, where the property lies, and where the court sits, which is to decide the cause" ; and it was held, that in respect to property lying in this country, its citizens are not to be deprived of that priority, which the laws give them, upon the ground that the contract was made in a foreign country, with a person resident abroad.

Though the law of a foreign country is admitted into our courts, in order that the contract may have the legal effect which the parties designed it should, still our courts are not bound to admit it, even for that purpose, provided it would contravene our own laws, in case they prohibited such a contract, or when it would be prejudicial to the rights of our own citizens.

In the case of *Skiff* v. *Solace,* the court thought they should give *priority* to the *lien* of the attaching creditors, they being citizens of this State, notwithstanding the debtor was a citizen of New York, and the chattel mortgage executed there, and the property there also.

If the question had not been decided, it might have been thought by some, that even in that case, as the contract was between *citizens of this State,* and both having *equal equities,* it would have been more consonant to reason, to have given *priority* to the *lien, first in time,* though acquired under the laws of a sister State, and not in accordance with our own.

No one could question the power of the court to have given effect in that case, to the laws of the place where the contract was made ; and the question was not whether a foreign law should be admitted into our courts in favor of a foreign citizen, to the prejudice of one of our own citizens ; but whether a *junior lien* acquired under our laws, and in favor of one of our citizens, should be preferred to an *elder lien* on the same property acquired also by one of our own citizens, by a contract made in a sister State, with

Taylor *v.* Boardman, Jr.

a debtor of that State, and where the property then was; and which, by the laws of such sister State, was, to all intents and purposes, valid against attaching creditors, and subsequent purchasers. The decision in that case, must necessarily have been *prejudicial* to the rights of one or the other of our own citizens, and it was for the court to say which, from a *conflict of laws*, should suffer; the one that had the *elder lien* under the laws of a sister State, or the one who had the *junior lien* under our own laws? And it seems, the court thought proper to give *priority* to the *junior lien* to the prejudice of the *senior lien*. The case now before us, is not a case of *lien*; but of absolute title in the plaintiff, acquired in a sister State, conformably to the laws thereof; and we think, that title should be protected in our own courts, notwithstanding the sale, by Hamilton, to one of our own citizens.

To hold that a citizen of Massachusetts, who had acquired an absolute and perfect title to a chattel under the laws of that State, (that State being at the time the *situs* of the property,) can be defeated of his right by a tortious sale of the property under our own laws, upon the ground that we do not give effect to a sale or chattel mortgage, as against creditors and subsequent purchasers, without a change in the possession, is more than we can accede to. The plaintiff comes into court and asks protection in a right which was perfect in his own State, and which would at all times be protected there, and which was first violated there, by the wrongful act of Hamilton; and we think he should not come in vain.

The judgment of the County Court is reversed, and the cause remanded to the County Court.