# WILLIAM EDGERLY, RESPONDENT, v. LEONARD BUSH, APPELLANT.

*Chattel mortgage — when mortgagee becomes owner — sale of mortgaged chattels — governed by laws of place — Right of purchaser at market overt in Canada — when foreign laws need not be pleaded.*

March 9, 1875, one Baker, formerly a resident of Canada, but then a resident of Moriah, in this State, executed to the plaintiff a chattel mortgage upon a span of horses, which was duly filed in the town clerk's office in Moriah. The money secured to be paid by said mortgage was payable in installments, the first installment being payable June 1, 1875. Subsequently Baker removed to Canada, taking the horses with him. November, 1875, the horses being in the possession of one De Lisle, a regular trader dealing in horses, were sold by him, in Canada, to one Bromly, of Plattsburgh. Bromly, hearing afterwards of plaintiff's claim, took the horses back to Canada and sold them to defendant, who had notice of plaintiff's claim. In an action brought by the plaintiff for the conversion of the horses, defendant having refused to deliver them up after demand duly made.

*Held*, that default having been made June 1, 1875, in the payment provided in the mortgage to be then made, the plaintiff was to be regarded as the legal owner of the horses at the time of their removal to Canada.

That the validity of the title acquired by Bromley in his purchase from De Lisle was to be determined by the laws of Canada.

That by those laws Bromly having purchased "from a trader dealing in similar articles," the plaintiff could not reclaim them without reimbursing to him the price he had paid.

That defendant could rely upon the title acquired by Bromly, even though he had notice of plaintiff's claim.

In an action for conversion, a defendant may show any facts tending to show title in himself, without specially pleading them, *e. g.* — the laws of a foreign country.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of the referee.

One Stephen Baker was born in Lower Canada and resided there till 1873. In that year he went to Moriah, in New York, and engaged there in the business of keeping a hotel and livery stable, and resided there. While a resident of Moriah he executed to the plaintiff, a resident also of Moriah, on the 9th day of March, 1875, a chattel mortgage for $850 on property, including the span of horses in question. This mortgage was duly filed in the town clerk's office in Moriah, March 10, 1875. The sum was payable in monthly installments, the first payment to be made June 1, 1875. The mortgage contained a clause, that on non-payment, or in case of removal of the property, or if the mortgagee deemed it necessary, he might take possession; otherwise the property was to remain in the mortgagor's possession until the time for the first payment. No part of the sum has ever been paid. On the 10th of May, 1875, Baker returned to Lower Canada, taking the property with him, and there he has resided ever since.

In November, 1875, at St. Jean Chrysostom, in Lower Canada, one Francis De Lisle, of that place, a regular trader, dealing in horses, sold the horses in question to one Bromly, a resident of Plattsburgh, in this State, receiving in exchange another horse and something to boot. Bromly made the purchase in good faith, and in ignorance of the plaintiff's claim. The horses were in De Lisle's possession at the time, and were at once delivered to Bromly, and immediately brought by him to Plattsburgh. It does not appear how the horses came into the possession of De Lisle.

On the 10th of December, 1875, Bromly learned that the plaintiff claimed to have a mortgage on the horses. To prevent their

seizure by the plaintiff, he immediately removed them to Canada for the purpose of trading back with De Lisle. On the 13th of December, 1875, in Canada, Bromly sold the horses to the defendant, receiving from him in exchange a span of horses, and giving him something to boot. At that time the defendant was a resident of this State, and owned land in Canada. The horses in question remained in Canada, and since then, and up to the time when this action was commenced, they had not been brought into this State. The defendant was informed by Bromly that he had run the horses into Canada to avoid a claim or seizure under a mortgage.

This action was brought for the conversion of, the horses, the defendant having refused to deliver them on demand. No offer was made by the plaintiff to pay to the defendant what he had paid, or what Bromly had paid for the horses. The defendant interposed a general denial, and claimed that Bromly by his purchase from De Lisle obtained a good title under the laws of Canada, which passed to defendant in his purchase from Bromly.

*B. M. Beckwith*, for the appellant.

*Waldo & Grover*, for the respondent.

LEANRED, P. J.:

We may assume that, after Baker took the horses into Canada, the plaintiff, according to the laws of this State, became the owner by the non-payment of the installments of the mortgage. We are to inquire, 1st. Whether the effect of the sale by De Lisle to Bromly was such, under the laws of Canada, that the plaintiff could not have recovered in Canada the horses from Bromly, at least without reimbursing him the price paid ; and 2d. If this be so, how the present action is affected by that rule of law.

The plaintiff, in the outset, objects that the laws of Canada were not pleaded. It was not necessary to plead them. Any facts tending to show title in the defendant, or to negative the conversion, may be proved. It was not necessary for the defendant to plead the facts which showed title. Again, the plaintiff insists that the defendant was not a *bona fide* purchaser. It is of

no consequence whether he was or not. If Bromly did not get a good title by his purchase from De Lisle, then the defendant acquired no title, whatever his *bona fides.* If Bromly did get a good title by his purchase from De Lisle, then the defendant has the benefit of that good title, whatever his knowledge. The purchaser always has the benefit of the *bona fides* of the vendor. This is an old principle. Otherwise, by notice given to those about to deal with him, the vendor might be deprived of the benefit of his *bona fides.*

The Code of Lower Canada contains several articles important to this controversy. Article six declares that movable property is governed by the domicile of the owner; but that the law of Lower Canada is applied in several cases, "and also in other cases specially provided for by the Code." Article 1489 is as follows: "If a thing lost or stolen be bought in good faith in a fair or market, or at a public sale, *or from a trader dealing in similar articles,* the owner cannot reclaim it without reimbursing to the purchaser the price he has paid for it." Article 2268. "Actual possession of a corporeal movable by a person as proprietor, creates a presumption of lawful title. * * * Prescription of corporeal movables takes place after three years. * * * This prescription is not, however, necessary to prevent re-vendication, if the things have been bought in good faith in a fair or market, or at a public sale, *or from a dealer dealing in similar articles.* * * * Nevertheless, so long as prescription has not been acquired, the thing lost or stolen may be re-vendicated, although it have been bought in good faith in the cases of the preceding paragraph; *but the re-vendication in such case can only take place upon reimbursing the purchaser for the price which he has paid.*"

These laws were proved as facts on the trial. It was further shown by evidence that chattel mortgages are not recognized by the law of Lower Canada; and the opinion was expressed that chattels mortgaged in another country would not be affected by the mortgage when brought into Canada.

But, if we assume that the mortgage to the plaintiff gave him the title to the horses after June 1, 1875, even in Canada, yet we find that the horses were in the possession of De Lisle, as proprie-

tor; that is, as one claiming to own them. And he was a trader, dealing in horses. Bromly bought from him in good faith. And, by article 1489, the plaintiff could not reclaim the horses, without paying Bromly the price he had paid.

If the question were between the plaintiff and Baker, or between persons claiming title through them severally, then, although the laws of Lower Canada do not recognize chattel mortgages, probably the courts of that country would enforce the rights of the mortgagee as established by the laws of this State. (*Taylor* v. *Boardman*, 25 Vt., 581; *Jones* v. *Taylor*, 30 id., 42; *Cobb* v. *Buswell*, 37 id., 337.)

But the cases last cited do not apply to the present case. For the question here is, admitting that the plaintiff was the owner of the horses, up to the time of the sale by De Lisle, whether that sale did not convey a good title. The article above cited is an enactment of the doctrine of market *overt* , and of the custom of London, extended to all traders. " Sales and contracts of anything vendible, in fairs or market *overt*, shall not only be good between the parties, but also binding on all those who have any right or property therein.  *  *  *  In London, every shop in which goods are publicly exposed to sale is market *overt*, for such things only as the owner professes to trade in." (2 Bl. Com., 449.) A sale in market *overt* binds infants, femes covert, idiots and lunatics, and men beyond sea or in prison. (Id., 450.) The object of the law is, " that the buyer, taking proper precautions, may at all events be secure of his purchase." (Id., 449.

There seems, therefore, to be no reason to doubt that, according to the law of Lower Canada, Bromly acquired a good title, subject only to the owner's right of reclamation on reimbursing Bromly what he paid. And it may be noticed, in passing, that in regard to horses sold in market *overt*, the English statutes gave a similar right of reclamation to the owner, on reimbursing to the purchaser the price paid *bona fide*. (Id., 451.)

The case of *Wheelright* v. *De Peyster* (1 Johns., 471) involved a question somewhat similar; that is, as to the effect of a sale in a foreign country. But the court there stated that no local law was alleged or proved, and that the question was to be governed by the general principles of sales. In the absence, then, of any

proof of the existence in the foreign country of a law like that of market *overt*, the court would presume that the law was the same there as in this State. In the present case the foreign law has been proved. Article 2268, above cited, explains the law of Lower Canada more fully. A term of three years is necessary to obtain title of movables by prescription. But this time is not necessary to prevent revendication (that is, a claim of the property), if the things have been bought in good faith * * * from a trader dealing in similar articles. Yet until that time has elapsed, there may be a revendication on reimbursing the purchaser.

If such, then, was the effect of the sale by De Lisle under the laws of Lower Canada, it remains that we inquire how this affects the rights of the present parties. We have already seen that the defendant has all the rights of Bromly. (*Alexander* v. *Pendelton*, 8 Cranch, 462.) The defendant then is the owner, unless we deny to the sale by De Lisle any effect out of Canada. The validity of a contract is to be decided by the law of the place where it was made. If valid there, it is by the general law of nations held valid everywhere. (Story Conf. Laws, § 242.) The validity of a contract of sale depends on the laws of the State where made. (*French* v. *Hall*, 9 N. H., 137; *Blanchard* v. *Russell*, 13 Mass., 4; *Kentucky* v. *Bassford*, 6 Hill, 526.) To the same effect is the elaborate opinion in *Martin* v. *Hill* (12 Barb., 631). In that case a chattel mortgage was made and duly filed in this State. The mortgagor removed the property into Vermont, where it was seized under an execution against the mortgagor. In an action by the mortgagee against the constable who seized the property, it was held that the plaintiff could recover. This was on the ground that the contract of mortgage, valid here, would be held valid in Vermont. And so the contract of sale, in the present case, valid in Lower Canada must be held valid here. So, if Bromly had been a mere purchaser from Baker, we must probably have held that Baker could give no title, even in Lower Canada, except subject to the mortgage. But Bromly was not a purchaser from Baker, or from the plaintiff. Nor does he claim under either of them; but he claims only under De Lisle and by the effect of the law of Canada above stated. That law must make that sale valid against " men beyond sea "—against every one.

For these reasons the judgment should be reversed, and a new trial granted; reference discharged; costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment reversed, and new trial granted; reference discharged; costs to abide event.