ARTHUR MORRISETTE *v.* CANADIAN PACIFIC RAILWAY CO.

January Term, 1902.

Present: ROWELL, MUNSON, START, WATSON and STAFFORD, JJ.

Opinion filed May 22, 1902.

*Injury to employee—Duty of employer—Contributory negligence—Proximate cause—Foreign law—Question for jury.*

It cannot be said as matter of law that a railroad company is free from negligence in placing and maintaining for its own convenience, a switch so near the track that a brakeman who was passing it on a moving car and did not know of its proximity to the track, is struck by it.

The risk of being struck by a switch located so near the track as to endanger a person passing it on a moving car, is not assumed by a brakeman who has not been warned and does not know of its proximity, the danger from it not being obvious.

It cannot be said as matter of law that the plaintiff, under the circumstances of the case, was guilty of contributory negligence; and under the law of the Province of Quebec, where the accident happened, contributory negligence does not necessarily prevent a recovery, since the defendant's negligence may have been the proximate and primary cause of the accident.

When a foreign law is to be proved as an ultimate fact, and the issue is raised by the pleadings and joined to the country, the testimony consisting of statutory provisions and expert testimony as to their construction, text-books and decisions, the question is for the jury under proper instructions.

CASE for personal injuries. Plea, the general issue. Trial by jury at the March Term, 1901, Orleans County, *Tyler,* J., presiding. Verdict ordered for the defendant, and judgment thereon. The plaintiff excepted.

*E. A. Cook* and *J. W. Redmond* for the plaintiff.

Did the court err in ordering a verdict? We discuss this question first upon the assumption that the law of Vermont is

to control. It cannot be said, as matter of law, that defendant was not negligent in locating and maintaining this switch in such dangerous proximity to its track. *Davis* v. *R. R. Co.,* 55 Vt. 91; 1 Shear. & Red. Neg. s. 189. The switch could have been located on the other side of the track, or a few inches further back, and been safe. The servant has a right to assume that the master has and will perform his full duty in regard to furnishing a safe place in which to work. The mere fact that this accident happened shows that defendant was negligent. *Houston* v. *Brush & Curtis,* 66 Vt. 333; *Johnson* v. *Railway Co.,* (Minn.) 41 Am. & Eng. R. R. Cases 293; *Allen* v. *Railway Co.,* (Iowa) 5 *Id.* 620; *Wood* v. *Railway Co.,* (Tenn.) 11, *Id.* 525; *Hall* v. *Railroad,* 16 Fed. Rep. 744; *Railway Co.* v. *Davis,* (Ala.) 9 So. Rep. 252; *Pidcock* v. *Railroad,* 1 L. R. A. 131; *Railroad* v. *Russell,* 91 Ill. 298; *Whipple* v. *Railroad,* 5 Am. & Eng. R. R. Cases 517; 3 Elliott on Railroads, ss. 1269, 1272; *Carbine's Admr.* v. *R. R. Co.,* 61 Vt. 348.

It cannot be said, as matter of law, that plaintiff was guilty of contributory negligence. This question is one of fact, unless the "facts and circumstances are so decisive * * * as to leave * * * no room for opposing inferences." *Gorman's Admr.* v. *R. R. Co.,* 65 Vt. 133; *Vinton* v. *Schwab,* 32 Vt. 612. In this case the plaintiff had not been warned, knew nothing of the danger, had had no occasion to observe it, had found other switches at a safe distance, and the danger was not an obvious one. *Whipple* v. *Railroad Co.,* 5 Am. & Eng. R. R. Cases 520, is much in point. *Crandal* v. *Railroad,* 35 Atl. 307; *Wood* v. *R. R. Co., supra; Railroad* v. *Burton,* (Ala.) 53 Am. & Eng. R. R. Cases 128; *Randolph* v. *McElligott,* (Conn.) 22 Atl. 1094. If the plaintiff was negligent, his negligence was not the proximate cause of the injury. The prox-

imity of the switch was the proximate cause. *Railroad* v. *Burton, supra; Boss* v. *Railroad,* (5 Dak.) 40 N. W. 590.

It cannot be said, as matter of law, that plaintiff assumed the risk. This risk was not one ordinarily incident to the business. It existed through the negligence of the defendant. *Severance* v. *Talc Co.,* 72 Vt. 182; *Dumas* v. *Stone,* 62 Vt. 442. See cases above cited on subject of contributory negligence. The plaintiff relies upon the law of the Province of Quebec, where this accident occurred. By that law, it was the duty of the defendant to furnish plaintiff with the safest place in which to work. This proposition was supported by the evidence. The court held that the evidence was addressed to the court; it should have been submitted to the jury. A foreign law is a question of fact. It was alleged in the declaration and traversed by the general issue. So are the authorities. *McLeod* v. *R. R. Co.,* 58 Vt. 737; *State* v. *Rood,* 12 Vt. 397; *Territt* v. *Woodruff,* 19 Vt. 185; *Taylor* v. *Boardman,* 25 Vt. 586; *Peck* v. *Hibbard,* 26 Vt. 698. The construction and interpretation of foreign statutes is equally a question for the jury. 13 Am. & Eng. Ency. Law 1069; *Tyler* v. *Trabue,* 8 B. Mon. (Ky.) 306; *Dyer* v. *Smith,* 12 Conn. 384; *Walker* v. *Forbes,* 31 Ala. 9; *Holman* v. *King,* 7 Met. 388; *Brackett* v. *Norton,* 10 Am. Dec. 181; *Kline* v. *Baker,* 99 Mass. 255; *Ingraham* v. *Hart,* 11 Ohio 255.

*F. E. Alfred* and *W. W. Miles* for the defendant.

The case does not show that the defendant was in any way negligent in maintaining the switch where it was located at the time of the accident. It was in the only place where it would answer the necessities of the defendant. There was nothing to obstruct a view of it, and negligence is never presumed. *Sisco* v. *Railroad,* 39 N. E. 958; *Lovejoy* v. *R. R. Co.,* 125 Mass. 79; *Gibson* v. *Railway Co.,* 63 N. Y. 449; *Randall* v. *R. R. Co.,* 109 U. S. 478; *Ryan* v. *R. R. Co.,* 26 R.

R. Cases 344; *Ladd* v. *Railroad Co.,* 119 Mass. 412; *Tuttle* v. *Railroad Co.,* 122 U. S. 189; *Navigation Co.* v. *St. Jean,* 1 Q. B. (Montreal Law Rep.) 252; *Reese* v. *Hershey,* 163 Pa. St. 253; *Titus* v. *R. R. Co.,* 136 Pa. St. 618; *Patten* v. *R. R. Co.,* 179 U. S. 658.

The plaintiff assumed the risk. He was an old employee. He was well acquainted with the switch. Its danger was obvious. *Grattis* v. *R. R. Co.,* 48 L. R. A. 409; *Tuttle* v. *Railroad Co., supra; Latramouille* v. *Railroad Co.,* 63 Vt. 345; *Dumas* v. *Stone,* 65 Vt. 442; *Hayes* v. *Colchester Mills,* 69 Vt. 1; *Lovejoy* v. *Railway Co., supra; Fisk* v. *Railroad Co.,* 158 Mass. 238; *Goldthwaite* v. *Street Railway Co.,* 160 Mass. 554; *Thain* v. *Railroad Co.,* 161 Mass. 353; *Goode's Admr.* v. *Railroad Co.,* 162 Mass. 287; *Content* v. *Railroad Co.,* 165 Mass. 267; *Ryan* v. *Railroad Co.,* 169 Mass. 267; *Railroad Co.* v. *Ostman,* 6 Am. & Eng. R. R. Cases 588; *Gaffney* v. *Railroad Co.,* 31 *Id.* 265; *Henderson* v. *Williams,* 66 N. H. 405; *Bancroft* v. *Railroad Co.,* 67 N. H. 466; *Kelly* v. *Railroad Co.,* 11 Atl. 659. *Ryan* v. *Railroad Co.,* 26 Am. & Eng. R. R. Cases is a strong authority in this case, for its facts were almost identical with those here.

The location of the switch was not a proximate cause of the injury. "The proximate cause of an injury is that cause which, in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which, the result would not have occurred." *Mill Co.* v. *Oil Co.,* 27 L. R. A. 583; *Insurance Co.* v. *Boon,* 95 U. S. 117; *Heeber* v. *Railroad Co.,* 31 L. R. A. 583; *Matthews* v. *Bouchard,* 28 Can. Sup. Ct. 580.

Applying the definitions found in the cases cited, to the case at bar, it cannot be said that the switch-stand, located and maintained as it was, was the proximate cause of the plaintiff's injuries.

The plaintiff was not in the line of duty when injured. He was a mere volunteer. He put himself beyond his master's undertaking, and being injured, must suffer the consequences. *Way* v. *Powers,* 57 Vt. 135; *Melor* v. *Manufacturing Co.,* 150 Mass. 362; *Bradley* v. *Railway Co.,* 14 Lea. 374; *Sears* v. *Cent. etc. Co.,* 53 Ga. 630; *Brown* v. *Byroads,* 47 Ind. 435; *Railroad Co.* v. *Myers,* 55 Pa. 288; *McGill* v. *Granite Co.,* (N. H.) 46 Atl. 684; *Wormell* v. *Railroad Co.,* 79 Me. 397; *Olson* v. *Railway Co.,* (Minn.) 14 R. R. Cases 770.

The plaintiff cannot recover because the accident was the result of a violation of a rule of the company with which he was familiar. *Francis* v. *Kansas City, etc. Co.,* 110 Mo. 387; *Gulf, etc. Co.* v. *Ryan,* 69 Tex. 665; *Trust Co.* v. *Railway Co.,* 69 Fed. Rep. 353; *Railway Co.* v. *Wallace,* 76 Tex. 636; *Prather* v. *Railway Co.,* 80 Ga. 427. The case shows, that if the plaintiff had observed the rule and remained on the top of the car until the station had been passed and the train had come to a full stop, this accident would not have happened. The defendant had a right to rely on the legal presumption that the plaintiff would keep within the rule and within his line of duty.

The case falls within the rule laid down by this court in *Carter* v. *Railroad Co.,* 72 Vt. 190, which is in full accord with that of the Supreme Court of the United States. *Randall* v. *Railroad,* 109 U. S. 27; *S. P. Co.* v. *Seley,* 152 U. S. 145; *Patton* v. *T. etc. Co.,* 179 U. S. 658.

The only question raised by the exceptions is as to the ordering the verdict for defendant. No question as to the admission or exclusion of evidence can be considered under this exception. *Poultney* v. *Glover,* 23 Vt. 328. This applies to all questions regarding the Canadian law disposed of by the court below. However, if this court regards those questions raised, we say there was no error. The question of what the

law of Canada was, was for the court. *Woodbridge* v. *Austin,* 2 Tyler 367; *Picard* v. *Bailey,* 26 N. H. 152; *Ferguson* v. *Clifford,* 37 N. H. 86; *Hall* v. *Costello,* 48 N. H. 176; *Cline* v. *Baker,* 99 Mass. 253; *Eley* v. *James,* 123 Mass. 36; *Wilson* v. *Carson,* 12 Md. 75; *Bank* v. *Wood,* 142 Mass. 563; *Gibson* v. *Insurance Co.,* 144 Mass. 81; *Shirley* v. *McCormick,* 135 Mass. 126; *Bank* v. *Barry,* 20 Md. 287; Story on Conflict of Laws, s. 638a; 1 Jones Ev. s. 172; 1 Greenl. Ev. s. 486.

There was no conflict in the evidence as to the law of Canada. It was only introduced for the purpose of its bearing on the question of the plaintiff's right to recover even though guilty of contributory negligence, and in such event as affecting only the question of damages.

ROWELL, J. This is case by a servant against the master for negligence in being knocked from the side of a moving freight car by a switch standing near the track.

The declaration contains two counts. The first is in common form. The second is like the first, except it alleges that in the Province of Quebec, where the accident happened, the law was at the time in question, that "every person capable of discerning right from wrong is responsible for the damage caused by his fault to another, whether by positive act, imprudence, neglect, or want of skill," and that by said law, as interpreted by the courts of said Province, contributory negligence does not defeat recovery; that by said law the defendant was bound to furnish the plaintiff with the safest place in which to work, and that "the word *person* includes bodies politic and corporate."

The defendant pleaded the general issue, and when plaintiff rested, moved for a verdict, (1) for that on the pleadings and the evidence no recovery could be had; (2) that there was no question of fact for the jury; (3) no negligence shown on the part of the defendant; (4) plaintiff guilty of contribu-

tory negligence as matter of law; (5) that he assumed the
risk; and (6) that he was not in the line of duty when injured.
The court sustained the motion, directed a verdict for the de-
fendant, and rendered judgment thereon, to which the plaintiff
excepted.

The plaintiff was head brakeman on a freight train run-
ning from Megantic, through Lenoxville, to Sherbrook. The
switch in question stood in the yard at Lenoxville, between the
main line and siding No. 1, as it is called in the case, and was
22 or 23 inches from the side of an ordinary freight car passing
it on the siding. The plaintiff's train, having orders to meet
another train at Lenoxville, took said siding in order to clear
the main line for that purpose, and the plaintiff, having dis-
mounted from his train to inquire of the operator about the
other train, was endeavoring to remount, the train being in
motion, and while his hands were hold of the grabirons and his
feet in the stirrup, trying to reach the ladder on the end of the
car, he was knocked off by the switch and injured.

The testimony tended to show that the switch could have
been located south of the main line, but that it would not be so
convenient there, and could not be seen near so far by a train
coming from Megantic. It also tended to show that the
plaintiff had never been told that the switch was near enough
to the track to knock one from the side of a passing car, and
that he did not know it was.

Can it be said as matter of law that the defendant was
not guilty of negligence in placing and maintaining this switch
so near the track? The cases bearing on this question are nu-
merous, and need not be reviewed, as that work has been so
often done, and the rule established by them so frequently de-
duced and applied. Thus, in *Davis* v. *The Central Vermont
R. R. Co.* 55 Vt. 84, 90, 45 Am. Rep. 590, it is said:

"Where the employment is hazardous, it is very generally agreed that the master assumes the duty of exercising reasonable care and prudence to provide the servant a reasonably safe place, and reasonably safe machinery and tools, to exercise the employment, and to maintain them in a reasonably safe condition."

This is the doctrine of the cases generally, though variously stated. Thus, in *Union Pacific Railway Co.* v. *O'Brien*, 161 U. S. 451, it is said:

"The general rule undoubtedly is, that a railroad company is bound to provide suitable and safe materials and structures in the construction of its road and appurtenances, and if from a defective construction thereof an injury happens to one of its servants, the company is liable for the injury sustained. The servant undertakes the risks of the employment as far as they spring from defects incident to the service, but he does not undertake the risks of the negligence of the master. The master is not to be held as guaranteeing or warranting absolute safety in all circumstances, but it is bound to exercise the care that the exigency reasonably demands in furnishing proper road bed, tracks, and other structures. * * * It is the duty of the company in employing persons to run over its road, to exercise reasonable care and diligence to make and maintain it fit and safe for use, and when a defect is the result of faulty construction that the employer knew or must be charged with knowing, it is liable to the employee for injuries resulting therefrom, if he used due care on his part."

In *Johnson* v. *St. Paul, etc. Railway Co.* (Minn.) 41 Am. & Eng. R. R. Cases, 293, it is said that a railroad company is bound to place signal posts or other structures used in connection with its road or the operation thereof, at a reasonably safe distance from the track, so as not to endanger brakemen or other employees who work on its trains; and if for any

reason it is necessary to erect or place such structures so close as to be hazardous to its employees, it is its duty to warn them of the danger, that they may understand the nature of the risks to which they are exposed, and that in the absence of such notice, they have a right to assume that the company has performed its duty in that respect.

Applying this doctrine to the case, it is clear that the question stated must be answered in the negative.

But it is claimed that the plaintiff assumed the risk. He did assume it if he knew and comprehended it, or if he ought to have known and comprehended it, but not otherwise, for it was not a risk ordinarily incident to such a service.

The plaintiff had worked for the defendant several years. Part of the time as yard brakeman at Megantic; part, as spare freight brakeman over this and other portions of the line; and for four or five months before the accident, as regular freight brakeman over this part of the line, and as such brakeman had many times passed through Lenoxville, knew the sidings there, and the location of this switch, which he had operated several times. He had never passed it on the siding in question on the side of a car, and had never been told, and did not know, that it was near enough to the track to knock one from the side of a car; had never staid by the switch when a car passed it, and never had occasion to, and had always found the other switches on the road safe.

The switch was not of itself a dangerous thing. Its danger lurked in its nearness to the track. But it is impossible to say as matter of law that that danger could have been seen and comprehended by mere observation, unaided by measurements, seeing a car pass, or some such thing. If it could have been, it is fair to presume that some one whose duty it was would have discovered and remedied it, for the switch had stood there

several years.  There are many cases supporting this view.
The defendant cites *Lovejoy* v. *The Boston & Lowell Railroad
Co.* 125 Mass. 79, 28 Am. Rep. 206, as a leading case holding
a different doctrine.  But that case is unlike this.  There the
plaintiff knew that the electric signal-posts, against one of
which he struck when leaning out of his engine, were set at the
uniform distance of three feet and eight inches from the track
all along the line; and the court said, knowing this, he assumed
the risk.  But here the switches were not at a uniform dis-
tance from the track; and besides, the plaintiff had always
found other switches along the line at a safe distance.

The defendant cites many other cases to the same point,
and largely from Massachusetts.  But they go mainly upon
the ground that the danger was obvious, and nothing of the
nature of a trap in it.  But here there was a trap, in that the
danger was not obvious, and knowledge of it not chargeable
to the plaintiff as matter of law.

The law of the Province of Quebec on this subject  seems
to be stronger against the master than our law.  The testimony
tended to show that by that law the master is bound to use all
reasonable care, and the best possible means, to protect his
servant, both as to the place in which he is employed and the
appliances that he is given to work with, and that the servant's
knowledge of the danger does not exonerate the master.

The testimony also tended to show that by the law of said
Province, the master owes to the servant all the protection that
a good father of a family owes to his children, and is bound
to take precautions necessary to guard the servant against ac-
cidents while in the line of his duty, even though caused by his
mistakes, imprudence, or thoughtlessness; that contributory
negligence is not a bar, unless it is the proximate and primary
cause of the accident, but goes only in mitigation of damages;

and that if the parties are in equal fault, the defendant is liable, but the plaintiff's fault mitigates, and perhaps to the extent of dividing the damages.

It appears by the transcript sent up, but not by the exceptions, that the trial court ruled the case on the ground of contributory negligence, and held that that was the proximate and primary cause of the accident, and defeated recovery under the Provincial law as well as under our law.

But we do not think it can be said as matter of law that the plaintiff was guilty of contributory negligence. The danger was not sufficiently obvious; he did not know enough about it; and was not enough in fault for not knowing,—to say that.

And if he was guilty of contributory negligence, it does not follow, as matter of law, that it would defeat recovery under the Provincial law, for if the parties were in equal fault, their faults were equally the proximate and primary cause of the accident, as they were concurrent, the defendant's being continuous. And if they were not in equal fault, it cannot be said as matter of law that the defendant's negligence was not the proximate and primary cause instead of the plaintiff's.

In some cases, as in cases of marine insurance, the nearest cause in time and place is considered as the proximate cause, for such is conclusively taken to be the intention of the parties to the contract. Here the proximate cause is the *causa causans,* the efficient and operative cause, which is by preeminence *the* cause. So in bills of lading, the *causa causans* determines the liability of the ship owner on his contract of affreightment.

But in actions of tort for negligence this is not so. There the *causa* may be modified to the degree of *sine qua non,* and its proximity has no necessary connection with continuity of space nor nearness of time, but only with that of which the result is the natural and probable consequence in the sense that a prudent man ought to have foreseen it. Hence in this class of cases,

the defendant's negligence is the proximate cause of the natural and probable consequences of it; and whether the result complained of in the concrete case is the natural and probable consequence of it, is a question for the jury, unless it is plain enough to be ruled as matter of law, which it is not in this case.

The testimony to prove the Provincial Law alleged in the declaration, consisted of certain provisions of the Civil Code of the Province, and of the testimony of Provincial lawyers, who produced in support of their testimony and referred to, text-books that they declared to be authoritative, and official reports of judicial decisions construing said provisions, and referred to cases in reports not produced, and to some so recent as not to be reported. The court ruled that this testimony was addressed to the court and not to the jury, which the plaintiff says was error. The defendant objects that the question is not raised by the exceptions, which are only to the direction of a verdict and the rendition of judgment thereon. But as every question involved in the rendition of a judgment is reached by an exception to its rendition, the question is raised.

Confining ourselves to the precise question presented, we hold that when a foreign law is to be proved as an ultimate fact, and the issue is raised by the pleadings and joined to the country, the testimony consisting of statutory provisions and expert testimony as to the construction of those provisions, supplemented and supported by text-books and judicial decisions, the question is for the jury, under proper instructions.

This proposition is supported by our cases. Thus, in *Woodbridge* v. *Austin,* 2 Tyler 364, 4 Am. Dec. 740, it being necessary for the plaintiff to prove the law of the Province of Lower Canada on which certain judicial proceedings were based, he said he could not do it, as they were based on the common law of the country, which was unwritten, and therefore could

not be produced. But the court said, if a foreign law is written, it must be produced, but if unwritten, it must be proved like any other fact, by the testimony of witnesses, and quoted what Lord Mansfield said in Cowper, that "the way of knowing foreign laws is, by admitting them to be proved as facts, and the court must assist the jury in ascertaining what the law is."

So in *State* v. *Stead,* 1 D. Chip. 303, it was permitted to read a statute of New York to the jury, to show the incorporation of a bank there. In *Danforth* v. *Reynolds,* 1 Vt. 259, the question of what Massachusetts law was, being preliminary to the admission of a deposition, the proof was addressed to the court.

In *Territt* v. *Woodruff,* 19 Vt. 182, it seems to have been held that it was for the auditor to find as a fact what the law of another state was. So in *Taylor* v. *Boardman,* 25 Vt. 581, it would appear that testimony was addressed to the jury, to show that a chattel mortgage had been foreclosed according to the law of Massachusetts.

In *Peck* v. *Hibbard,* 26 Vt. at p. 706, 62 Am. Dec. 605, it is said that foreign laws must be pleaded and proved as facts. And in *McLeod* v. *The Conn. & Pass. Rivers R. R. Co.,* 58 Vt. at p. 737, 6 Atl. 652, it is said that "when a foreign law creates the duty, it becomes a traversable fact like any other fact creating a duty, upon which the defendant has a right to go to the jury, and it must be alleged in the declaration."

And this is said to be the general rule. 1 Whart. Ev. § 303. In *Ufford* v. *Spaulding,* 156 Mass. 65, 30 N. E. 360, three kinds of evidence were introduced to prove the law of New Hampshire, namely, statutory, judicial decisions, and an auditor's report; and it was held to be a question of fact for the jury. In *Brackett* v. *Norton,* 4 Conn. 517, 10 Am. Dec. 179, the court instructed the jury what the law of New

York was, and held error, for that the question should have been submitted to the jury. In *Hall* v. *Costello,* 48 N. H. 176, 2 Am. Rep. 207, it is ruled the other way, but some of the cases referred to in support of the ruling are quite to the contrary, and some are in chancery. Thus, in *Church* v. *Hubbart,* 2 Cranch, 187, the circuit court permitted foreign edicts and judgments of sequestration to go to the jury. The Supreme Court did not intimate that this was wrong, but held that they were not admissible because not properly authenticated. In *Francis* v. *Ocean Ins. Co.,* 6 Cow. 404, 429, it is expressly said that such evidence is addressed to the jury. *Monroe* v. *Douglas,* 5 N. Y. 447, is a chancery case, and so is the one referred to in Peere Williams. *Taimbey* v. *Vignier,* 6 C. & P. 25, is much in point. There the question was as to the meaning of certain sections of the Code Napoleon in respect of bills of exchange. A French advocate was called as a witness by the defendant, and testified his opinion of the meaning and legal effect of the sections, referring to a printed copy of the Code before him, and reading decisions of the French courts in support of his opinion; and the question was submitted to the jury, with full instructions to assist them in ascertaining what the law was.

The defendant contends that there was no conflict in the testimony as to the Provincial law, and that therefore it was for the court to say what it was. But it is not for the court in a case like this to determine an issue of fact joined to the country merely because the testimony is not conflicting. The question is still for the jury, if the testimony tends to support the issue. Nor can it be said that the testimony was not conflicting to some extent at least, for decisions were referred to holding the law both ways, the testimony tending to show that the decisions had gradually changed since about 1866, until

the law had come to be what the plaintiff claimed it. It was for the jury to say how this was.

Whether the plaintiff was in the line of his duty or not when injured, was a question for the jury, as his testimony tended to show that he was; for he said that it was his duty to make the inquiry of the operator that he did; that he had left his train "lots of times" to make such inquiry, and had done it several times at this station; and that the object of his inquiry at this time was, to ascertain whether he had got to cut his train to clear a highway crossing there, which could not be blocked longer than five minutes. It does not appear whether the rule prescribing this duty of inquiring was in writing or not. Several printed rules were shown in evidence, some of which, the plaintiff said, did not apply to his train at that time, and none of which can be said to override his testimony as to his duty to inquire. Therefore it was for the jury to say whether he was justified in leaving his train.

*Judgment reversed and cause remanded.*