*Litchfield,*
June,
1823.

Mitchell
*v.*
Hazen.

BRACKETT *against* NORTON.

A claim for services rendered in another state, under a contract made there, must be determined by the laws of that state.

Foreign laws cannot be taken notice of judicially, but must be proved as facts ; and, with respect to this subject, the several states of the Union are to be considered, in relation to each other, as foreign nations.

Whether a particular transaction is conformable to the laws of another state, is a question, which the jury have the exclusive right of determining ; and although the judge may express an opinion on the evidence, he is not authorized to direct the jury what verdict to find.

HARVARD LAW LIBRARY

*Litchfield,*
*June,*
*1823.*

*Brackett*
*v.*
*Norton.*

The general powers of an attorney, on principles of the common law, do not terminate when he has prosecuted the suit in which he is retained to final judgment and execution; but he may give directions concerning the levy of the execution, and when the fruits of it are obtained, receive the money, and acknowledge satisfaction.

If an attorney, after having obtained final judgment and execution, prevent the collection of the execution, by fraudulent conduct, this will be in violation of his duty as attorney, and will deprive him of all legal claim for his services in procuring such judgment and execution.

So, if an attorney, having fraudulently defeated the collection of an execution, which he had obtained, and having omitted to give any information of this fact to the creditor, be requested to bring a suit against the sheriff for the recovery of the debt, which, by reason of the culpable act of such attorney, is defeated, he can recover nothing for his services in such suit.

*Qu.* Whether an attorney employed to collect a debt, after final judgment and execution, has authority, by virtue of his original retainer, to institute and prosecute a suit against the sheriff to recover the money.

In this action, the plaintiff, an attorney at law in the state of *New-York*, sought to recover for services rendered by him, in that capacity, to the defendant, in that state.

The cause was tried at *Litchfield, February* term, 1822, before *Chapman*, J.

The claim of the plaintiff consisted of two bills of costs; one of which arose in prosecuting to judgment a suit in the supreme court of the state of *New-York*, on a note in favour of the present defendant against *William Beekman,* jun. of *Otsego* county; the other, in prosecuting, in the same court, a suit in favour of the defendant, against *James Hawks*, Esq., sheriff of *Otsego* county, for default of his deputy, in not having duly levied and collected the execution, which issued on the judgment obtained on said note. It was admitted, that the execution had never been collected; and that *Beekman* had been discharged from his debts under the laws of the state of *New-York*. The defendant offered evidence to prove, and claimed that he had proved, that it was owing to the negligence and fraudulent conduct of the plaintiff, that the execution was not collected; and that the suit against the sheriff, was occasioned by the like negligence and fraudulent conduct of the plaintiff. The defendant, therefore, prayed the judge to charge the jury, that if they should find the facts to be proved as claimed, they should return a verdict in his favour. The judge instructed the jury as follows: "As the demand in this case arises for services rendered by the plaintiff to the defendant, as an attorney in the state of

*New-York,* the duty of the attorney, as well as the obligation and extent of it, must be determined by the laws of that state. By the laws of that state, an attorney, after he has prosecuted a suit to final judgment and execution, and has delivered the execution to the proper officer, to levy and collect according to law, has done all that he was bound as an attorney to do for his client, in respect to the collection of it; except only he is bound to receive the money of the officer, when collected, and give a receipt for the same. He is not bound, nor has he any right, to interfere with the officer in the collection of the execution; and should he do so, and thereby injure the creditor, he would not be liable to him, in an action against him *for misconduct as an attorney.*" The judge further instructed the jury: " As to the claim, which the plaintiff had for his fees in the suit on the note, you have a right, by the laws of the state of *New-York,* to set off any damages the defendant may have sustained, by the fraud, negligence or misconduct of the plaintiff, in the management of said suit, or in the exercise of his powers as an attorney therein; and the rule of law is the same in respect to his fees charged in the suit against the sheriff; but damages sustained by the defendant, by the misconduct of the plaintiff, in the management of one cause, cannot be set off to diminish the claim which the plaintiff has for his fees in the other cause, provided the retainers in such suits were had at different times, and were separate. An authority to collect a note merely, does not include in it a power to prosecute the officer for misconduct in collecting the execution, which may have issued thereon; and under these directions you will find your verdict."

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial, on the ground of a misdirection.

*Bacon* and *T. Smith,* in support of the motion, contended, 1. That as a general rule, it is the duty of the attorney to give to the officer all needful and proper directions with respect to the levy of the execution. He is, therefore, liable for both negligence and fraud. *Mott* & al. v. *Kip,* 10 *Johns. Rep.* 478. *Doty* v. *Turner,* 8 *Johns. Rep.* 20. *Kellogg* v. *Griffin,* 17 *Johns. Rep.* 274. *Martin* v. *Hawks,* 15 *Johns. Rep.* 405.

2. That if this be not the general rule, yet in this case, as the creditor lived in *Connecticut,* and beyond the reach of the

HARVARD LAW LIBRARY

*Litchfield,*
*June,*
*1823.*

Brackett
*v.*
Norton.

officer, it must have been the understanding of the parties, that the attorney should exercise all the powers necessary to effectuate an ultimate collection of the money; and this the court may presume, from the situation of the parties, as matter of law. *Smedes'* exrs. v. *Elmendorf, 3 Johns. Rep. 185.*

3.  That the rule prescribed by the judge, with respect to setting off the damages, which the defendant had sustained, by the negligence and fraudulent conduct of the plaintiff, was incorrect.  The judge ought to have instructed the jury, that the defendant could avail himself of the negligence and fraudulent conduct of the plaintiff in the first suit, as a defence against his claim for compensation in the second, if such negligence and fraudulent conduct of the plaintiff in the one, occasioned the loss of the other.  The circumstance of there being separate retainers, is wholly immaterial.

4.  That the judge improperly adopted the law of the state of *New-York,* as his guide.  The law of the place in which the plaintiff seeks his remedy, is to determine whether he is entitled to recover.

*P. Miner* and *J. W. Huntington,* who had been of counsel for the plaintiff, in the superior court, owing to certain circumstances, which had since transpired, declined arguing the present motion.

Hosmer, Ch. J.  The general question, in the case, is, whether the law implies a contract, that the defendant shall pay the plaintiff for the services performed by him; and the motion for new trial, is founded on the supposed incorrectness of the charge given to the jury.

The services of the defendant having been rendered in the state of *New-York,* under a contract made in that state, their laws are the standard, by which the case must be determined.  Although the charge of the judge, contains a construction of these laws, and a direction to the jury, in what light they are to be regarded; yet, from the imperfection of the motion, I am unable to discover, whether they were in evidence before the court and jury, or whether the judge expressed a judicial opinion upon them; no testimony, in this particular, having been exhibited.  That the court could *ex officio* take notice of, and give a construction to the above-mentioned laws, after the uniformity of doctrine and decision on this subject, will not be pretended.  All the determinations concur

in this, as an established principle, " that the way of knowing foreign laws, is, by admitting them to be proved as facts ; and the court must assist the jury in ascertaining what the law is." *Mostyn* v. *Fabrigas, Cowp.* 174. *Freemoult* v. *Dedire,* 1 *P. Wms.* 429. *Male* v. *Roberts,* 3 *Esp. Rep.* 163. *Talbot* v. *Seeman,* 1 *Cranch* 38. 1 *Chitt. Plead.* 219. 1 *Phill. Ev.* 301, 2. n.

In the *United States,* this doctrine has often been recognized. *Smith* & al. v. *Blagge,* 1 *Johns. Ca.* 238. *Legg* v. *Legg,* 8 *Mass. Rep.* 99. ; and that the respective states, in relation to each other, being within the reason of the rule, are, in this particular, to be considered as foreign nations. In *Hebron* v. *Marlborough,* 2 *Conn. Rep.* 18. this court adopted the same principle in respect of the laws of *Massachusetts.* That the laws of *New-York,* in relation to the duties of an attorney, under a general retainer, are peculiar and different from our own, or, at least, were supposed to be, may conclusively be inferred, from the whole frame and purport of the charge to the jury. Hence, to these laws, they were referred, as the guide of their decision ; and the instruction given them, regardless of the common law, as understood in *Westminster-Hall,* or in this state, was entirely restricted to the laws of *New-York.* If these laws were not in evidence, the court assumed a judicial knowledge of them ; and for this reason, the charge below was erroneous. But if, in relation to them, proof was exhibited to the jury, although the judge might express an opinion on the evidence, he was not authorized to give a direction ; as in thus doing he usurped the jurisdiction of those who have an exclusive right to determine every question of fact. *New-York Firemen Insurance Co.* v. *Walden,* 12 *Johns. Rep.* 513. *Smith* v. *Carrington,* 4 *Cranch* 62.

In his charge to the jury, the judge, after having clearly and definitely informed them, what was the law of *New-York,* on the subject under their consideration, said to them ; " under these directions you will find your verdict." From the whole tenor of the charge, as well as from the concluding observation just recited, the fact on trial was taken from the jury, and definitely settled by the court. In this respect, the proceeding below was erroneous ; and if it resulted in an ultimate determination of the cause, I might here with propriety pause. But as there must be a rehearing, and the law of *New-York* may be found, what I have no reason to doubt it

HARVARD LAW LIBRARY

*Litchfield,*
*June,*
*1823.*

*Brackett*
*v.*
*Norton.*

will, not peculiar, but like our own, founded on the common law, as generally understood, I will pursue the subject a little further.

On the principles of the common law, as generally understood, and as recognized in the state of *New-York,* so far as the reports of their determinations give evidence, I entertain no doubt, that the plaintiff, at the time of his supposed fraudulent interference, in defeat of the execution, was attorney to the defendant. The cases of *Crary* & al. v. *Turner,* 6 *Johns. Rep.* 51. *Jackson* d. *McCrea,* v. *Bartlett,* 8 *Johns. Rep.* 361. and *Kellogg* v. *Gilbert,* 10 *Johns. Rep.* 220. on which much reliance has been placed, only prove, that an attorney, from his general powers, cannot, without payment of the debt, discharge a debtor from custody under an execution, or acknowledge satisfaction of the demand. In all the above cited cases, the point determined, was not when the attorney's powers terminated, but admitting their continuance, that they did not confer authority for the performance of an act, which, from its nature, was fraudulent; and such is the unquestionable law of *Westminster-Hall.* *Cage's* case, *Styles* 129. An opinion was expressed, that the authority of an attorney determined with the judgement, or at least with the issuing of execution; and in support of this position, reference was had to the common law, as stated in 2 *Inst.* 378. 2 *Bos.* & *Pull.* 357. and 2 *Shower* 138. In the case cited from *Bosanquet* and *Puller, Heath,* J. observed, that by several cases collected in *Roll. Abr.* it appeared, that the authority of an attorney determines with the judgement. In 2 *Institute,* it is said, not in accordance with the preceding remark, that an attorney in the suit may sue out execution, within the year, without a new warrant; and in *Morton's* case, 2 *Show.* 138. [139.] it was decided, that the payment of debt and costs to the sheriff, on executing a *ca. sa.,* does not discharge the judgment; but " otherwise, if the money had been paid to the plaintiff's attorney upon record, for that would have been a payment to the plaintiff himself." That an attorney, on an original suit, may sue out a *scire-facias* against bail, or pray out an *alias,* was adjudged in *Burr* v. *Atwood,* 1 *Salk.* 89.; and in *Roll. Rep.* 366., it is laid down, that after judgment he may acknowledge satisfaction on record, upon receiving the money. The assertion, then, that the power of an attorney terminates on the judgment's being rendered, is not sustainable; and that it remains, until the

execution is collected, is indisputably true, or he could not do the act of an attorney, by the reception of the money *in that capacity.*

It becomes, however, an important inquiry, to ascertain, although the general powers of an attorney remain, how far they extend. An answer to this question is furnished, by several determinations of the supreme court of the state of *New-York.* In *Doty* v. *Turner*, 8 *Johns. Rep.* 20. the plaintiff's attorney delivered an execution to the sheriff, and *directed* him to levy it on the property of the defendant, but said, that he supposed the plaintiff did not wish to distress the defendant, and that if the property remained in his possession, after the levy, the plaintiff would not hold the sheriff responsible, if it was squandered, and that he need not take a receipt for it. In this case, it was adjudged to be competent for the plaintiff, to prove the preceding *directions* given by his attorney, after the sueing out of the execution. Confessions of a general deputy of the sheriff, made to the plaintiff's attorney, in answer to inquiries relative to the execution delivered to such deputy, *while the execution was in force*, were in *Mott & al.* v. *Kip*, 10 *Johns. Rep.* 478. held admissible evidence to charge the sheriff. And in *J. and G. Kellogg* v. *Griffin*, 17 *Johns. Rep.* 274., the instructions given by the plaintiff's attorney, to the sheriff, to whom he delivered an execution, were received in evidence; and principally, on this basis, the case was determined. The supreme court of *Massachusetts*, in *Dearborn* v. *Dearborn*, 15 *Mass. Rep.* 316. decided, that an attorney, who undertakes the collection of a debt, and commences a suit, upon which the debtor is held to bail, will be liable to an action by his client for negligence, should he neglect seasonably to sue a *sci. fa.* if *non est inventus* be returned on the execution. The plaintiff had caused a demand to be lodged with the defendant, then an attorney, regularly practising in the courts of common pleas and supreme judicial court, upon which he procured a writ to be issued, and thereupon the defendant's body was arrested, and bail was taken. Final judgment was duly obtained, an execution granted, and the same returned *non est inventus;* but against the bail, no *scire-facias* was sued out and served. The defendant, who was the attorney alluded to, contended in his defence, that a *scire-facias* was a new suit, in which he was not engaged; " not having undertaken to prosecute it, nor having received any directions therefor,

*Litchfield,*
June,
1823.

Brackett
*v.*
Norton.

HARVARD LAW LIBRARY

*Litchfield,*
*June,*
*1823*

Brackett
*v.*
Norton.

from the plaintiff." The Chief Justice charged the jury, that an attorney, having undertaken to collect a debt, if bail was taken, *was bound to prosecute a scire-facias to final judgment ; unless he notified his client of the state of the demand, so that he might have an opportunity to decide for himself, whether it should be prosecuted or not.* The court sanctioned the determination of the judge at *Nisi Prius,* and expressed the opinion, that, "when an attorney undertakes to collect a debt, he is bound to sue out all process necessary to the object ;" that " a *scire-facias* is not a new suit ; and that " it is a regular step in the collection of the original demand ; and the attorney cannot excuse himself for neglecting seasonably to sue it, *unless he give notice to his client, and request specific instructions,* where he entertains doubts of its expediency."

The cases, which I have cited, demonstrate, that the general powers of an attorney, do not terminate, when he has prosecuted the suit to a final judgment and execution, and delivered it for collection to a proper officer ; but, on the other hand, that *he may give directions concerning the levy of the execution, and when the fruits of it are obtained, receive the money and acknowledge satisfaction.* And the case of *Dearborn* v. *Dearborn* clearly involves the principle, that an attorney, having received a debt to collect, has bound himself, by contract, to take all regular steps requisite to insure its collection ; and if he is dubious as to the result of any legal measure contemplated, to inform his client and receive his instructions.

An implied contract is that which reason and justice dictate, and which, therefore, the law presumes a person has contracted to perform ; and upon this presumption, makes him answerable to such persons, as suffer by his non-performance. 3 *Black. Com.* 158. Upon this principle, the court may, and often does, presume the extent of an agency, from the nature of the case ; and hence a contract, either necessary or highly expedient, in the attainment of a given object, is reasonably to be inferred. When a note is sent for collection, from a creditor in one state to an attorney in another, by the reception of it to collect, the latter assumes the duty of performing the measures requisite for this purpose, with integrity, diligence and skill. Having obtained judgment, and delivered the execution to a legal officer, he has not performed all his duty as an attorney to the creditor ; and all the

cases, which show, that he may receive the money collected, and acknowledge satisfaction on the record, establish this proposition. That he may give directions to the sheriff, relative to his management of the execution, I entertain no doubt; and that it is his duty to do it, is equally clear, when, in his opinion, it will accomplish the object of his appointment. If, for example, he knew of property belonging to the debtor, which was unknown to the officer, he is bound to give him information, or he will not act with common integrity; and if he co-operate with the debtor, in the concealment of his estate, and thus frustrate the collection of the execution, he palpably violates the duty he has assumed. All these are principles founded in reason; and the opposite of them I can never admit; "for I have so great a veneration for the law, as to suppose that nothing can be law, which is not founded in common sense or common honesty." *Per Ashhurst*, J. 3 *Term Rep.* 62. Now, as evidence was offered to prove, that the plaintiff prevented the collection of the *execution, by fraudulent conduct;* this, if established, *was in violation of his duty as an attorney;* and so the jury should have been instructed. As a consequence, they should have been informed, that for his services rendered in procuring the judgment and execution, he had no legal claim.

From the motion, it appears, that the frustration of the suit against the sheriff, was likewise occasioned by the fraud of the plaintiff. On this point the motion is very defective, in not having pointed out the nature and circumstances of the fraud alluded to. As the basis of my opinion, I will assume the facts to be, as they were suggested in the argument, and as I understood, not contradicted; that having fraudulently defeated the collection of the execution, and having omitted to give any information of this fact to the defendant, the plaintiff was requested to bring a suit against the sheriff, which, by reason of the culpable act of the plaintiff, was defeated. To recover for his services in the action aforesaid, is one object of the present suit. I do not admit, that any authority except what was originally given, to pursue the requisite measures for collecting the defendant's debt, was legally necessary; but the consideration of this subject, as being of no importance in this case, I shall waive. Had the fact been fully known by the defendant, and after this, he had thought proper to invest the plaintiff with authority to bring the suit in question, I should not consider his services

HARVARD LAW LIBRARY

*Litchfield,*
*June,*
*1823.*

*Brackett*
*v.*
*Norton.*

as invalidated, by the antecedent fraud. But the suppression of the truth, in this important particular, (if such were the fact,) was itself a fraud, and contaminated all the subsequent acts of the plaintiff. On the supposition assumed, the plaintiff knew, that by fraud, he had prevented the collection of the execution, and that a recovery against the sheriff was impossible. With this knowledge, not communicated to the defendant, but confined in his own breast, he commenced a hopeless suit, which, as he must have anticipated, was determined against his client. Having violated his duty, by the perpetration of a fraud, and by this act occasioned to the defendant, the loss of his debt; he now demands remuneration for his faithless services. The ground of mere precedent, if it existed, must be unquestionable to sanction the reward of such misconduct; and much more, to authorize the establishment of a principle, that will protect and invite results so flagrantly unjust. "All laws," (as was said by Lord *Kenyon*, in *Paisley* v *Freeman*, 3 *Term Rep.* 51.) "stand on the best and broadest basis, which go to enforce moral and social duties;" and although the neglect of moral duties of imperfect obligation, is not the ground of an action, the palpable violation of a legal contract, is always the subject of redress in the civil forum. The ground, I assume, if the facts contended for by the defendants are true, is this; that there was fraud, not confined to a point merely, but contaminating, from beginning to end, all the plaintiff's services.

As the result of my observations, I am of opinion, that the judge below, assumed that jurisdiction which exclusively belonged to the jury, by *directing* them, in relation to their verdict on matter of fact; that the opinion expressed by the jury, that an attorney had done all he was bound to do, when he had delivered an execution obtained, to the proper officer, except to receive the money when collected, and thus withdrawing from their consideration the fraud, to prove which, evidence had been exhibited, was not correct; and that the omission to state to them, the legal effect of the fraud committed by the plaintiff, by reason of which he recovered for services, when the law implied no contract in his favour, was erroneous. I would, therefore, advise a new trial.

PETERS and BRAINARD, Js. were of the same opinion.

CHAPMAN and BRISTOL, Js. dissented.

New trial to be granted.