HATHAWAY & MORSE *vs.* O'GORMAN COMPANY.

PROVIDENCE—NOVEMBER 16, 1904.

PRESENT: Tillinghast, S. A. J., and Douglas and Blodgett, JJ.

(1) *Contracts. Sales.*

Defendant agreed to purchase a quantity of tea at fifty-two cents a pound. Plaintiff agreed to give to the purchaser of every pound of tea a deed of a house lot, until all the lots were deeded, on receipt of two dollars for executing the deed. Defendant guaranteed to have all lots deeded in three months. Plaintiff delivered to defendant a supply of tea, and gave deeds of the lots when requested. At the end of three months there remained in plaintiff's possession a number of lots, and in defendant's possession a supply of tea. After verdict for plaintiff, in an action for breach of contract:—

*Held,* that the contract contemplated the purchase of the tea by defendant, the amount being fixed by the acts of the parties.

*Held*, further, that plaintiff was entitled to recover the fixed price per pound
for the amount of tea delivered and accepted by defendant, plus the sum of
two dollars per lot for all lots remaining unsold, less the present value of
the lots.

ASSUMPSIT.   Heard on petition of defendant for new trial,
and denied.

DOUGLAS, J.   The parties to this suit, on the third day of
July 1902, entered into the following agreement:

"PROVIDENCE, R. I., July 3, 1902.

"Memorandum of agreement made this day by and between
O'Gorman Co., Providence, R. I., of the first part, and Hatha-
way & Morse, of New Bedford, Mass., of the second part.   The
party of the first part agrees to purchase a quantity of tea, and
to pay for the same at the rate of fifty-two cents per pound.
Returns to be made up and paid for each week.   They also
agree to furnish space on the first floor, front, for demonstrator,
and to advertise the tea in a satisfactory manner, until all the
lots on Pocasset Heights are deeded, also to furnish window
display.   The party of the second part agrees to put in a dem-
onstrator and to give to the purchaser of every pound of tea,
that shall require it, a warranty deed of a house-lot at Pocasset
Heights until all are deeded on receipt of $2.00 from the pur-
chaser for executing the deed.   The party of the second part
further agrees to give to the party of the first part the exclusive
right for the sale of this tea, and the giving of these lots for the
period of three months, at end of which time the party of the
first part guarantees to have lots all deeded.   The party of
the second part agrees to put a surveyor to work July 7th.
Stake the land on Pocasset Heights Platt and Lake View Platt,
number lots, mark streets.   They further agree to pay one-half
of advertising bills contracted in advertising this deal.

                        "O'GORMAN COMPANY,
"Witness to both                "THOS. A. O'GORMAN, *Treas.*
by P. H. Sharkey."         "HATHAWAY & MORSE,
                                   "by MORSE."

In pursuance of this agreement the plaintiffs delivered to

the defendant 1,116 pounds of tea, and gave deeds of the lots to purchasers of tea whenever they requested them. Sales of tea and conveyances of lots went on simultaneously until at the end of three months there remained in the plaintiffs' possession 692 lots, and in the defendant's possession 674 pounds of tea. The defendant meanwhile had expended in advertising $742. The plaintiffs collected $2.00 each for the lots conveyed, and the defendant collected and retained the price of the tea which was sold. At the end of the three months the defendant abandoned further action under the contract, refusing, however, to return the tea, and the plaintiffs, on March 5th, 1903, tendered deeds of the remaining lots and demanded a settlement.

The defendant contended that the plaintiffs had not fulfilled their agreement in some of the details, but the evidence very strongly supports the finding of the jury that the contract was substantially performed by the plaintiffs and that they have a right to recover whatever they have lost by the defendant's default.

The jury assessed the damages for the plaintiffs at $1,427.82, and the main question in the case is whether or not the amount is correct. It is made up as follows:

"1,116 pounds of tea at 52 cents................  $580 32
692 lots unsold, at $2.00.............  $1,384 00
Less the present value of the lots......   240 00  1,144 00
                                                  _____
                                                  $1,724 32
Less one-half the advertising contracted by the defendant.....................................   371 00
                                                  _____
Making the balance due plaintiff.................  $1,353 32
Interest from March 5, 1903, to date of trial......    74 50
                                                  _____
                                                  $1,427 82"

We think that by the terms of the contract the plaintiffs are entitled to recover this amount. The agreement, is, first to purchase a quantity of tea at fifty-two cents per pound. It is not to receive the tea and sell it on commission, but to buy

it. The amount that should be purchased is not stated, but has been fixed by the acts of the parties. In pursuance of this agreement of purchase the plaintiffs delivered to the defendant, and the defendant accepted, 1,116 pounds. Here were all the necessary elements of a bargain and sale, agreed price, delivery, and acceptance.

It did not make the sale any less binding that afterwards the seller demanded the return of the goods and the buyer refused to deliver them. After the sale was complete neither party could rescind it without the consent of the other. It is evident, therefore, that the contention that the tea unsold still remains the property of the plaintiffs, and that they should bring trover for its value instead of assumpsit for its price, is untenable, and that the case of *Whipple* v. *Stevens*, 25 R. I. 563, cited by counsel, has no application.

The defendant secondly agreed to procure all the lots to be disposed of within three months, to purchasers who should pay the plaintiffs two dollars each.

If the contract had been fulfilled the plaintiffs would have received two dollars for each lot, instead of which they have the lots. The uncontradicted testimony of experts fixes the value of the lots remaining at not more than $240.00. It is argued that the two dollars were to be expended in executing the deeds. If it were so the sum was to have been expended by the plaintiffs, and they were at liberty to have executed the deeds by their own hands and to have retained the two dollars. In fact, the evidence shows that the plaintiffs had incurred all the expense of preparing and executing the deeds and had them ready to fill out with the numbers of the lots and the names of the purchasers as they should be called for. They had already expended, therefore, so much of the two dollars each as the contract required them to use, and are entitled to call upon the defendant for the sums which it failed to procure for them.

A remarkably large portion of the record in this case recites the arguments of counsel and the observations of the court upon questions of the admissibility of evidence and the proper method of estimating damages.

The rulings of the court are not entirely consistent with each other, but the jury seem to have profited by the discussions which took place in their presence and inasmuch as they adopted and applied a correct rule and arrived at a correct result, it is unnecessary for us to discuss the exceptions which were taken to the rulings of the court.

The petition for a new trial is denied, and the case will be remanded to the Common Pleas Division for judgment upon the verdict.

*Comstock & Gardner, and Wm. W. Moss,* for plaintiffs.
*Edward D. Bassett,* for defendant.