[Civ. No. 5831. First Appellate District, Division Two.—September 3, 1927.]

HILDA HUDSON, Appellant, v. C. C. VON HAMM, Respondent.

James Walter Scott for Appellant.

A. B. Dunne, Dunne, Dunne & Cooke and Dunne, Brobeck, Phleger & Harrison for Respondent.

THOMPSON (R. L.), P. J., *pro tem.*—This is an appeal from a judgment entered upon an order sustaining a demurrer to a fourth amended complaint, without leave to amend. The action was brought in California against a father for injuries resulting from an alleged tort of his minor child, which occurred at the residence of the father in the territory of Hawaii.

The complaint was filed April 26, 1924, and alleges that plaintiff "is, and . . . has been a resident of the state of California," and that the defendant is a resident of the territory of Hawaii, and is the father of two minor children named Constance and Rosalie Von Hamm, aged fourteen and ten years, respectively; that in October, 1919, defendant employed plaintiff as a governess to train, educate and discipline said children; that, pursuant to said employment, she went to defendant's home in Honolulu and entered upon the performance of her duties; that the said Rosalie was an active, strong, healthy child disposed to climb about the furniture, all of which was known and unrestrained by the defendant; that on January 5, 1920, without the knowledge or consent of plaintiff the child Rosalie entered the bedroom of plaintiff and "carelessly and negligently in violation of repeated prior warnings . . . climbed upon a rocking-chair . . . behind the back of plaintiff, and . . . fell therefrom, striking plaintiff upon her right shoulder with great force and violence," causing serious injuries, impairing her earning ability, and that she has never recovered from said in-

juries. Damages aggregating the sum of $30,212 are claimed by plaintiff as a result of said injuries.

The plaintiff pleads the provisions of section 2375 of the Revised Statutes of Hawaii in the following language: "In section 2375 of the 'Revised Laws of Hawaii, 1915,' it is provided as follows, to-wit: 'Sec. 2375, Torts, who may sue, and for what. Except as otherwise provided, all persons residing or being in this territory shall be personally responsible in damages for trespass or injury, whether direct or consequential, to the person or property of others, or to their wives, children under majority, or wards, by such offending party, or by his wife, or his child under majority, or by his command, or by his animals *domitae* or *ferae naturae;* and the party aggrieved may prosecute therefor in the proper courts.' (C. C. 1859, s. 1125; Cp. L. s. 1125; C. L. s. 1241; R. L. s. 1742.)"

Two questions are presented on this appeal: (1) Can this action for the tort of a minor child which was committed in the jurisdiction of a foreign territory be maintained in California against the father of the child while the law of the respective jurisdictions, as to the subject matter, is in absolute conflict? (2) Has the Hawaiian statute which is relied upon by appellant been sufficiently pleaded to show the existence and validity of the statute at the time of the commission of the tort?

■ The statutes of a foreign state must be pleaded and proved as any other fact relied upon. (*Ryan* v. *North Alaska Salmon Co.,* 153 Cal. 438 [95 Pac. 862]; 23 Cal. Jur. 665, sec. 58; 5 Cal. Jur. 427, sec. 9; 25 R. C. L. 949, sec. 202; 24 Standard Ency. of Proc. 97.) Upon failure to plead such foreign statutes, it will be presumed they are the same as the statute of California on the particular subject involved. (5 Cal. Jur. 484, sec. 52; *Ryan* v. *North Alaska Salmon Co., supra; Norris* v. *Harris,* 15 Cal. 226; 5 Cal. Jur. 427, secs. 9, 12.) ■ The states and territories of the American Union are foreign to each other within the meaning of the rule which requires foreign statutes to be pleaded and proved. (20 Ency. of Pl. & Pr. 600; *Hemsted* v. *Reed,* 6 Conn. 490; *Brackett* v. *Norton,* 4 Conn. 517 [10 Am. Dec. 179].)

■ With respect to the liability of a father for the torts of his minor children, where the father is entirely free from

participation in the wrong, the statutes (Civ. Code, sec. 3520) and the general policy of the law in California are in absolute conflict with the statute of Hawaii. California follows the common law in that respect, which has been the rule in England since 1302 (Y. B. 30, 31, 31 Edw. I 203, Rolls Ed.; 7 Harvard L. Rev. 384), while, upon the contrary, the territory of Hawaii follows the civil law, which is totally at variance with the common law. (*Day v. Day,* 8 Haw. 715; *Rathburn* v. *Kais,* 23 Haw. 541.)

The application of these conflicting rules is well expressed by the able author of Ruling Case Law in volume 20, at page 627, where it is said: "Parents are not liable for torts committed by their minor children without participation in the fault by the parent." (*Hagerty* v. *Powers,* 66 Cal. 369 [56 Am. Rep. 101, 5 Pac. 622]; *Figone* v. *Guisti,* 43 Cal. App. 606, 611 [185 Pac. 694]; *Perry* v. *Simeone,* 197 Cal. 132 [239 Pac. 1056]; *Paul* v. *Hummel,* 43 Mo. 119, 122 [97 Am. Dec. 381]; Shearman and Redfield on Negligence, 6th ed., sec. 144.) "There are several jurisdictions in which the common law has been changed by statutes based on the civil law, which makes the parent liable for all torts committed by his minor children under his control. . . . It is not enough to make the father liable that he knew his child was heedless or vicious. But the father is liable if he was himself guilty of negligence, as by allowing a young child to have a loaded gun or pistol, etc. He is liable however only for his own fault, and not for that of the child."

The action in the instant case, which is based upon an extraterritorial tort, is transitory in its nature, and if the statutes or established law of California and Hawaii concurred in holding a father liable for the torts of his minor child, or in the absence of established law in California conflicting with that of the foreign territory, under proper pleadings, our state courts would assume jurisdiction, and try the cause. (5 Cal. Jur. 483, sec. 52; *Ryan* v. *North Alaska Salmon Co., supra; McManus* v. *Red Salmon Canning Co.,* 37 Cal. App. 133 [173 Pac. 1112].) But where the statute of the foreign state or territory is in absolute conflict with the statute or the policy of the law of the forum, there is no violation of the doctrine of comity in refusing to accept jurisdiction to try the cause at the *lex fori.*

■ The fact that the defendant is a resident of a foreign territory will not preclude the assumption of jurisdiction by the courts of the forum, nor will the fact that both litigants are nonresidents prevent the application of the doctrine of comity. Strictly construed, the complaint fails to allege that the plaintiff was a resident of California at the time her injuries were received. Since she was injured in the performance of her employment at the residence of her employer in Honolulu, it may be assumed that she was then a resident of Hawaii and not a resident of California. The defendant was also a resident of Hawaii. In the state of New York it is said: "The courts in their discretion have repeatedly refused to accept jurisdiction over causes of action arising out of a tort committed in a foreign state, where both the plaintiff and the defendant were non-residents." (*Gregonis* v. *Philadelphia & Reading Coal & Iron Co.*, 235 N. Y. 160 [31 A. L. R. 1, 139 N. E. 226].) But probably the weight of authority is not in accord with the New York rule in this respect. In 2 Wharton on Conflict of Laws, 1093, section 478, it is said: "In the United States it is generally conceded that such suits lie, even though the parties be foreigners, and the tort complained of was committed in the land to which they in common belong . . . and the prevalent rule is that, to sustain an action for a tort committed abroad, the *lex fori* and the *lex loci delicti* must concur in holding that the act complained of is the subject of legal redress." The mere fact that litigants are non-residents should not suffice to deny them access to the courts of the forum, for valuable property rights might thus be lost.

■ There is no violation of the inhibition of the federal constitution against special privileges and immunities in refusing to accept jurisdiction where the law of the forum is in direct conflict with the foreign law relied upon. Article IV, section 2, of the United States constitution provides that: "The citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." Pursuant to this federal guaranty, a citizen of any foreign state or country may maintain an action at the forum, where under similar circumstances a citizen of its own jurisdiction could maintain such an action. In the case of *Chambers* v. *Baltimore & O. Ry. Co.*, 207 U. S. 142 [52 L. Ed. 143, 28 Sup. Ct. Rep. 34], Mr. Justice Moody says:

"The state may determine the limits of the jurisdiction of
its courts, and the character of the controversies which shall
be heard in them. The state policy decides whether and to
what extent the state will entertain in its courts transitory
actions, where the causes of action have arisen in other
jurisdictions. Different states may have different policies,
and the same state may have different policies at different
times. But any policy the state may choose to adopt must
operate in the same way on its own citizens and those of
other states. The privileges which it affords to one class
it must afford to the other. Any law by which the privileges
to begin actions in the courts are given to its own citizens
and withheld from the citizens of other states is void be-
cause in conflict with the supreme law of the land." And
in the famous Slaughter-House cases reported in 16 Wall.
(U. S.) 36 [21 L. Ed. 394], Mr. Justice Miller said: "The
sole purpose (of this constitutional provision) was to de-
clare to the several states that whatever those rights, as
you grant or establish them to your own citizens, or as you
limit or qualify or impose restrictions on their exercise, the
same, neither more nor less, shall be the measure of the
rights of citizens of other states within your jurisdiction."
But there is no California law in conflict with the foregoing
federal constitutional provision. A nonresident is denied no
privilege which is conferred upon a citizen or resident of
the forum. Upon the contrary, it is asserted that because
it is the settled policy of the law of California that a parent
is exempt from liability for the torts of his minor children
where he does not participate in the wrong, that therefore a
nonresident may not maintain such an action at the forum,
even though a foreign statute may authorize it, for the
reason that the policies of the law of the respective jurisdic-
tions are in irreconcilable conflict. In 5 Ruling Case Law,
911, section 5, it is said: "In the recognition and enforce-
ment of foreign laws the courts are slow to overrule the posi-
tive law of the forum, and they will never give effect to a
foreign law when to do so would prejudice the state's own
rights or the rights of its citizens, or when the enforcement of
the foreign law would contravene the positive policy of the
law of the forum whether that policy be refuted in statutory
enactments or not." Of course, "the existence of a statute
of the forum substantially like the foreign statute under

which the cause of action arises is the best and most conclusive indication that it is not contrary to the policy of the forum to entertain the action." (1 Wharton on Conflict of Laws, 280b.) But the policy of the forum may be indicated by its current decisions as well as by its statutory or constitutional law. (5 R. C. L. 499, sec. 301; Id. 1039; 12 C. J., 439, sec. 16; *Spead* v. *Tomlinson*, 73 N. H. 46 [68 L. R. A. 433, 59 Atl. 397]; *Zeigler* v. *Illinois T. & S. Bank*, 245 Ill. 180 [19 Ann. Cas. 127, 28 L. R. A. (N. S.) 1112, 91 N. E. 1041, 1045]; *Glover* v. *Baker*, 76 N. H. 393 [83 Atl. 916, 932].) It is the rule in a majority of the states that when the cause of action depends upon a foreign statute, as it does in the instant case, there must be a statute in the forum similar to the one relied upon, in order to confer jurisdiction upon the courts of the forum. (5 R. C. L. 1040, sec. 131.) In 12 C. J. 438, section 14, the author says: "The doctrine of comity must yield to the positive law of the land. Hence the foreign law must give way when in conflict with the statutes of the forum, or the settled current of its judicial decisions." Likewise, in *Studebaker* v. *Mau*, 14 Wyo. 68 [82 Pac. 2], the court says: "Comity will not intervene to enforce the laws of a foreign state or country, if such enforcement would contravene the well established policy of the forum, or be prejudicial to the interest of its citizens, or when it comes in conflict with a positive law. Comity will only be adopted by courts of justice *in the silence of a particular rule* affirming, denying or restricting the operation of foreign laws." So, also, in 2 Wharton on Conflict of Laws, section 478a, it is asserted that, "the question of assuming jurisdiction is a matter of comity—that is, the courts paying due deference to the precedents at the forum, may decline jurisdiction upon the ground that it is contrary to the public policy of the forum to entertain the action, . . . The court will undoubtedly decline the jurisdiction if there is a fundamental difference of policy between the laws of the two states or countries, but a slight variance of views with respect to common law principles does not defeat the jurisdiction." (5 R. C. L. 915, sec. 9, 1040, sec. 131; *Walsh* v. *New York & N. E. R. Co.*, 160 Mass. 571 [39 Am. St. Rep. 514, 36 N. E. 584]; *Eingartner* v. *Illinois Stm. Co.*, 94 Wis. 70 [59 Am. St. Rep. 859, 34 L. R. A. 503, 68 N. W. 664].) With relation to the applica-

tion·of the doctrine of comity, Mr. Joseph Story, in his Conflict of Laws, section 38, declared that "it is inadmissible when it is contrary to its (the forum's) known policy, or prejudicial to its interests. In the silence of any positive rule affirming, denying or restraining the operation of the foreign laws, courts of justice presume the tacit adoption of them, . . . unless they are repugnant to its policy, or prejudicial to its interests." |There is good reason for declining to accept jurisdiction of a cause which would require the enforcement of foreign laws in conflict with the avowed policy of the law of the forum, for otherwise the forum might be called upon to enforce principles of law inimical to the welfare of its citizens, and subversive of plain justice. The law of the land is deemed to be a declaration of principles ·best adapted to the peace, order, and welfare of its subjects, and it would be abhorrent to justice to require the enforcement of principles in conflict with the established law of the forum. |

The English rule is aptly stated in *Carr* v. *Francis,* App. Cas. 176, 182, 71 L. J. K. B. (N. S.) 361, 85 L. T. (N. S.) 144, 50 Week. Rep. 257, to the effect that there are two concurring conditions essential in order to confer jurisdiction of an extraterritorial tort upon a local court. (1) The wrong must be of such a character that it would have been actionable if committed in the forum; (2) The act must not have been justifiable by the law of the place where it was committed. (Dicey on Conflict of Laws, 697.) However, this well-established English rule appears to have been limited in its application to American courts. In *Huntington* v. *Attrill,* 146 U. S. 657 [36 L. Ed. 1129, 13 Sup. Ct. Rep. 224, see, also, Rose's U. S. Notes], Mr. Justice Gray says: "Some courts have held that the wrong must be one which would be actionable by the law of the place where the redress was sought, as well as by the law of the place where the wrong was done. . . . But this is not the law of this court. By our law a private action may be maintained in one state, *if not contrary to its own policy,* for such a wrong done in another and actionable there, although a like wrong would not be actionable in the state where the suit was brought." (*Louks* v. *Standard Oil Co.,* 224 N. Y. 99 [120 N. E. 198].) It must be conceded that the doctrine of comity has been applied in this country and jurisdiction

assumed even in the absence of a statute of the forum corresponding to the statute of the *lex loci* which is relied upon. (*Dickinson Farm Mortgage Co.* v. *Harry,* 273 U. S. 119 [71 L. Ed. 569, 4 Sup. Ct. Rep. 308].) This case involved an action brought in the state of Illinois for damages for fraud committed in Texas in violation of its statute. But the court there said: ''The Texas statute as applied in this case does not add any extraordinary feature to the common law liability for fraudulent representations.'' It therefore appears that the enforcement of the Texas statute did not conflict with the policy of the law of Illinois, but, upon the contrary, was in consonance with it.

While there may appear to be some confusion of authorities due to a natural difficulty in construing laws or statutes, and in applying the doctrine of the law of comity, the decisions of the courts of America seem to be in harmony to the effect that when the positive law of the forum, represented by its constitution, statutes, or current decisions is in substantial conflict with the law of the foreign state, country, or territory, upon the subject matter in controversy, the courts of the forum will decline to accept jurisdiction without violation of the doctrine of the comity of nations.

It is contended that the language of the complaint to the effect that in ''section 2375 of 'Revised Laws of Hawaii, 1915,' *it is provided,*'' etc., is not a sufficient affirmative statement that the particular act of the Hawaiian legislature was actually in force January 5, 1920, when the tort complained of was committed. Respondent suggests that the compilation of laws termed ''Revised Laws of Hawaii'' may have contained the specific statute referred to in the year 1915, as alleged, but that the act might have been actually repealed after that date and prior to the date upon which the tort is alleged to have occurred; in other words, that there is no definite allegation of the existence of a statute in Hawaii on January 5, 1920, holding a parent liable for the torts of his minor children independent of participation in the wrong, on the part of the parent. But in view of the fact that the policy of the law in California is in direct conflict with such a statute, even if it were properly alleged to have existed, it becomes unnecessary to determine this matter.

We are of the opinion that the demurrer to the fourth amended complaint was properly sustained on account of the conflict of law which exists between the forum and the foreign territory. The judgment is therefore affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 31, 1927.