[Civ. No. 6746.   Third Dist.   Apr. 9, 1943.]

WILLIAM THOME, Appellant, v. ARTHUR W. MACKEN, Respondent.

Fred O. Small and J. Everett Barr for Appellant.

David R. Vandenburg and Tebbe & Correia for Respondent.

ADAMS, P. J.—Appeal from a judgment sustaining a demurrer without leave to amend.

Plaintiff, a resident of the State of Oregon, brought this action in the Superior Court of Siskiyou County, charging that defendant, in the State of Oregon, wilfully and wrongfully intending to injure plaintiff and deprive him of the affection, comfort, society, aid and assistance of his wife, and to destroy the affections of said wife for plaintiff, and to alienate her affections from plaintiff, did, at divers times during the month of May, 1939, to and including the 15th day of July, 1940, alienate and destroy the affections of plaintiff's wife, and did entice and abduct her from plaintiff, whereby plaintiff has wholly lost and been deprived of the assistance, comfort, society and aid of his said wife, to plaintiff's damage in the sum of $25,000.

To said complaint defendant demurred on the ground that it does not state facts sufficient to constitute a cause of action, that it is barred by section 341.5 of the Code of Civil Procedure of California, and that the court has no jurisdiction of the subject matter of the action.

Section 43.5 of the Civil Code of California, enacted in 1939, provides that no cause of action arises for alienation of affection. Section 341.5 of the Code of Civil Procedure enacted at the same time fixed a limitation of 60 days after the effective date of said section for the commencement of any cause of action for alienation of affections. Both sections became effective September 19, 1939. This action was not instituted until September 6, 1940, so if the latter section applies, the suit was barred by its provisions. However, we do not consider a determination of its applicability necessary to a determination of the case.

■ The real question is whether the courts of California will entertain an action for damages for a tort committed in another state, when the positive law of the forum forbids the prosecution of an action for such tort.

In *Hudson* v. *Von Hamm*, 85 Cal.App. 323 [259 P. 374], wherein it was sought to hold the father of a minor child liable for a tort committed by said minor child in Hawaii, in conformity with the law of Hawaii but in conflict with the law of this state, the court said, p. 326:

"The action in the instant case, which is based upon an extraterritorial tort, is transitory in its nature, and if the statutes or established law of California and Hawaii concurred in holding a father liable for the torts of his minor child, or in the absence of established law in California conflicting with that of the foreign territory, under proper pleadings, our state courts would assume jurisdiction, and try the cause. (5 Cal.Jur. 483, sec. 52; *Ryan* v. *North Alaska Salmon Co.*, *supra* [153 Cal. 438 (95 P. 862) ] ; *McManus* v. *Red Salmon Canning Co.*, 37 Cal.App. 133 [173 P. 1112].) But where the statute of the foreign state or territory is in absolute conflict with the statute or the policy of the law of the forum, there is no violation of the doctrine of comity in refusing to accept jurisdiction to try the cause at the *lex fori*."

Also, pp. 327-328:

"There is no violation of the inhibition of the federal constitution against special privileges and immunities in refusing to accept jurisdiction where the law of the forum is in direct conflict with the foreign law relied upon. Article IV, section 2, of the United States constitution provides that: 'The citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states.' Pursuant to this federal guaranty, a citizen of any foreign state or country may maintain an action at the forum, where under similar circumstances a citizen of its own jurisdiction could maintain such an action. In the case of *Chambers* v. *Baltimore & O. Ry. Co.*, 207 U. S. 142 [52 L. Ed. 143, 28 Sup. Ct. 34], Mr. Justice Moody says: 'The state may determine the limits of the jurisdiction of its courts, and the character of the controversies which shall be heard in them. The state policy decides whether and to what extent the state will entertain in its courts transitory actions, where the causes of action have arisen in other jurisdictions. Different states may have dif-

ferent policies, and the same state may have different policies at different times. But any policy the state may choose to adopt must operate in the same way on its own citizens and those of other states. The privileges which it affords to one class it must afford to the other. Any law by which the privileges to begin actions in the courts are given to its own citizens and withheld from the citizens of other states is void because in conflict with the supreme law of the land.' ''

The court also quoted from 5 Ruling Case Law 911, section 5, as follows:

''In the recognition and enforcement of foreign laws the courts are slow to overrule the positive law of the forum; and they will never give effect to a foreign law when to do so would prejudice the state's own rights or the rights of its citizens, or when the enforcement of the foreign law would contravene the positive policy of the law of the forum whether that policy be reflected in statutory enactment or not.''

And the court added, p. 331:

''While there may appear to be some confusion of authorities due to a natural difficulty in construing laws or statutes, and in applying the doctrine of the law of comity, the decisions of the courts of America seem to be in harmony to the effect that when the positive law of the forum, represented by its constitution, statutes, or current decisions is in substantial conflict with the law of the foreign state, country, or territory, upon the subject matter in controversy, the courts of the forum will decline to accept jurisdiction without violation of the doctrine of the comity of nations.''

It is conceded by appellant that entertainment of this action by a California court would be merely a matter of comity, and that if the maintenance of such actions is contrary to the public policy of this state no relief should be granted. He argues, however, that section 43.5, supra, is not an expression of the public policy of this state but is ''merely the suspension of certain types of action in the state;'' that ''the mere suspension of the type or kind of action is not in itself an expression of public policy.'' He submits that the only reason for the enactment of the section was to prevent persons within the state from permitting or encouraging conduct for the purpose of creating a lawsuit, but that it is no concern of this state if a sister state wishes to allow such a cause of action to arise within its own borders, and that when such cause

has there arisen this state should not assist the offending party to escape liability by coming within its borders; and he quotes from *Loranger* v. *Nadeau,* 215 Cal. 362 [10 P.2d 63, 84 A.L.R. 1264]. It is true that in that case the court held that the application of the common law rule permitting a recovery on the part of a guest based on the ordinary negligence of the operator of an automobile, which prevailed in Oklahoma where the tort for which recovery was sought was committed, was not precluded by the statute of this state requiring proof of gross negligence.

The court said, pp. 366-367:

"The State of Oklahoma follows the common-law rule and permits a recovery on the part of a guest based on the ordinary negligence of the operator of the car. Prior to the enactment of section 141¾ of the California Vehicle Act in 1929 the law of this state was the same. Did the requirement of proof of gross negligence foreclose here the enforcement of the right which arose in Oklahoma? We are persuaded that it did not. The liability of a host to his guest for negligent injuries existed in both states. The trial court assumed jurisdiction of the subject matter of the action and acquired jurisdiction of the parties, both residents of this state. It cannot be said that in doing so the court violated any fundamental principle of justice or public policy of this state and no question of good morals would seem to be involved. [Citing cases.] The case of *Hudson* v. *Von Hamm,* 85 Cal.App. 323 [259 P. 374], is not applicable or controlling. There it was held in effect that the law of the foreign jurisdiction was so fundamentally opposed to the public policy of this state as to justify the trial court in refusing to assume jurisdiction of the cause."

Reliance is also had upon the case of *Biewend* v. *Biewend,* 17 Cal. 2d 108 [109 P.2d 701, 132 A.L.R. 1264], wherein it was sought by a divorced wife, who had re-married, to collect alimony payments accrued within five years under a decree of a Missouri court, the laws of Missouri allowing the continuance of alimony payments after the remarriage of the wife, although California statutes do not. The court there said that upon the basis of comity, California courts have in numerous cases ordered that a foreign decree for future payments of alimony be established as the decree of the California court with the same force and effect as if it had been entered in this state; but that such rule of comity is subject to the principle that foreign laws will not be given effect when con-

trary to the settled public policy of the forum, but that it must be clear that the enforcement of the right obtained under the laws of another state would be prejudicial to recognized standards of morality and to the general interests of the citizens in the state of the forum. It went on to say that the right to receive future installments of alimony though at variance with section 139 of our Civil Code is not perforce inharmonious with local public policy; that it offers no threat to either the moral standards or the general interests of the citizens of this state.

We find nothing in those decisions in conflict with the decision in *Hudson* v. *Von Hamm, supra,* nor do we believe that they compel a conclusion that the action before us must be entertained by our courts. In *Loranger* v. *Nadeau* the court pointed out that the liability of a host for his guest for negligent injuries existed in both states. The difference was only one of degree of negligence necessary for recovery. And in the Biewend case our court was enforcing a judgment of a sister state, and not authorizing the prosecution of a tort action the prosecution of which is forbidden by our laws.

While the Legislature of this state in enacting section 43.5, *supra,* did not expressly declare that the actions proscribed thereby are contrary to public policy, we doubt not that they constitute such a declaration.

It is said in 12 Am.Jur. 668, regarding the sources of public policy, that "Where there are constitutional or statutory provisions, they govern as to what is the public policy. Where the lawmaking power speaks on a particular subject over which it has constitutional power to legislate, public policy in such a case is what the statute enacts."

The United States Supreme Court said in *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290, 340 [17 S. Ct. 540, 41 L. Ed. 1007]:

"The public policy of the government is to be found in its statutes, and when they have not directly spoken, then in the decisions of the courts . . . but when the lawmaking power speaks upon a particular subject . . . public policy in such a case is what the statute enacts."

Statutes abolishing actions for alienation of affections have been enacted in several states since 1935, to wit: Alabama (General Laws 1935, No. 356, p. 780); Colorado (Laws 1937, c. 111, p. 403); Illinois (Laws 1935, p. 716); Indiana (Laws

1935, c. 208, p. 1009) ; Michigan (Acts 1935, No. 127, p. 201) ; New Jersey (Acts 1935, c. 279, p. 896) ; New York (Laws 1935, c. 263, p. 732) ; Pennsylvania (Laws 1937, No. 441, p. 2317) ; Nevada (Stats. 1943, c. 53). In the enactment of several of these statutes the legislatures have stated their purpose to be to declare and carry into effect the public policy of the state. For instance, the Legislature of New Jersey stated:

"WHEREAS, The remedies herein provided for by law for the enforcement of actions based upon alleged alienation of affections, criminal conversation, seduction and breach of contract to marry have been subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances, and such remedies having been exercised by unscrupulous persons for their unjust enrichment and such remedies having furnished vehicles for the commission or attempted commission of crime and in many cases have resulted in the perpetration of frauds, it is hereby declared as the public policy of the State of New Jersey that the best interests of the people of the State will be served by the abolition of such remedies. Consequently, in the public interest, the necessity for the enactment of this article is hereby declared as a matter of legislative determination."

Colorado, New York and Nevada made similar declarations. The Illinois act is entitled "An Act in relation to certain causes of action conducive to extortion and blackmail . . ." and the Indiana and Pennsylvania statutes are entitled acts "to promote public morals." The recent Nevada statute is entitled "An act to promote public morals by abolishing civil causes of action for breach of promise to marry, and alienation of affections. . . ."

While the Legislature of Alabama made no declaration, the Supreme Court of that state, in *Young* v. *Young,* 236 Ala. 627 [184 So. 187], in affirming a judgment sustaining a demurrer to a complaint in an action for alienation of affections, said:

"The well known reason for striking down the causes of action named in the act, all growing out of relations between the sexes, was in response to public sentiment, after wide discussion, to the effect that such actions had been so abused, made the means of exploitation and blackmail, that the existence of such causes of action had become of greater injury than of benefit to society."

In *A. B.* v. *C. D.*, 36 F. Supp. 85, an action for breach of promise to marry, the court said regarding the statutes of New York and Pennsylvania: "It seems to me that there is a policy enunciated by these enactments abolishing breach of promise actions which is broader than their letter. The Legislatures evidently have been prompted by concern for the public morals. . . . The evil sought to be overcome was reasonably deemed serious enough to justify a denial of the judicial process to those asking relief from real as well as fictitious wrongs. Cases based on averments similar to those here alleged had in many instances been supported by perjured testimony and consequently brought discredit on the courts. Further, actions of this sort have been declared a menace to the marriage institution, which is a vital concern of the various states. See the declaration of policy prefacing the above-cited New York enactment." Also, "The breach of promise occurred in New York, and under the New York Statute no cause of action arose 'either within or without' New York. The Pennsylvania Statute is similar. Furthermore, Pennsylvania has declared that no suits for breach of promise shall be begun or prosecuted in this state. 48 P.S.sec. 173. I deem the instant action to be essentially one for a breach of promise to marry and within the prohibition of the Pennsylvania Statute. It is clear that such a cause of action, even if it arose in a state other than New York or Pennsylvania, and even if it were valid where it arose, would not be enforced by the Pennsylvania courts."

In *Hanfgarn* v. *Mark*, 274 N. Y. 22 [8 N.E. 2d 47], in sustaining the constitutionality of the New York statute in so far as it abolished actions for alienation of affections, the court said that at common law the rights which a husband had in the affection and society of his wife were frequently denominated a property right, and that the same statement had often been reiterated in comparatively late judicial opinions, but that in view of the broad and almost unlimited extension of the rights of married women brought about by statutory enactments and social advancement no court in that state would decide that the rights which a husband has by virtue of the marriage relation constitute property rights; and that a wife is no longer the property of her husband in the eyes of the law and by general acceptance of society.

This court cannot ignore what it knows to be the fact, that the abolition by the Legislature of this state of causes of action

for alienation of affections was a recognition of the changing social and legal status of women, and a declaration of the broad social trend of opinion that the abolition of such actions would tend to improve public morals and serve the best interests of the people of the state.

We therefore conclude that section 43.5 of the Civil Code constitutes an expression of public policy, and that the courts of this state properly may decline to accept jurisdiction of causes of action for alienation of affection arising in other states.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.